72 So.2d 257

**ROY O. MARTIN LUMBER CO., Inc. et al.**

**v.**

**SAINT DENIS SECURITIES CO., Inc.**

No. 40982.

March 22, 1954.

Rehearing Denied April 26, 1954.

Maurice T. Mouton, Alexandria, for appellant.

J. S. Pickett, Many, James W. Jones, Jr., Natchitoches, for defendants-appellees.

McCALEB, Justice.

This is a suit for $29,066.30 damages for an alleged breach of an executory contract to sell real estate. Plaintiff avers that, beginning on March 8th 1951, it conducted negotiations with St. Denis Securities Co. Inc., which was represented by its President, James W. Jones, Jr., for the purchase of approximately 1400 acres of land owned by that company in Natchitoches Parish; that, as a result of these parleys, the defendant corporation, through Jones, submitted a written offer on March 26th 1951 to sell the property for $18,000; that this offer was accepted by it in writing on March 27th 1951, which acceptance was acknowledged in writing by defendant corporation through its President on March 28th 1951; that, thereafter, it contacted Jones several times in an effort to complete the sale, all without avail, and that the latter informed it that the directors of defendant corporation refused to consummate the transaction. It is further alleged that the defendant corporation is owned by said Jones and his immediate family and that, in the event the court should hold it blameless in the premises, then Jones is responsible for the damage as he promised to sell the property when he knew he did not have authority to do so.

As a further alternative, plaintiff pleads that, in the event the defendants should

be held not liable for damages ex contractu, the said Jones, having proximately caused the damages, is responsible in tort.

Availing themselves of the privilege accorded by Article 175 of the Code of Practice, defendants appeared and prayed for oyer of the writings upon which plaintiff bases its claim. In response to this demand, plaintiff produced five letters and also an unsigned instrument styled "Option to purchase". Upon their production, defendants interposed separate exceptions of no right of action and no cause of action. And, alleging in their exception of no right of action that these documents, together with other evidence, written and verbal, would reveal that plaintiff was without right to sue because, among other things, Jones was not authorized by the St. Denis Securities Co. Inc. to sell the land, they prayed that a hearing be had for the purpose of receiving evidence in support of their contention.

In accordance with this request, the judge heard evidence on the so-called exception of no right of action, following which he maintained this exception and dismissed plaintiff's suit, being of the opinion that any offer made by Jones was ineffective as it had never been ratified or approved by the Board of Directors of St. Denis Securities Co. and that Jones was not responsible because, at the time he made the offer, plaintiff knew that he did not own the land. Wherefore this appeal.

At the outset, counsel for plaintiff complains that the trial judge was without authority to consider, on the hearing of the exception of no right of action, evidence showing that Jones was without power to offer to sell the real property belonging to defendant corporation for the reason that the question of Jones' authority, or his lack of it, was a matter for the merits of the case.

■ This contention is without merit because (1) the evidence, which was received at the hearing of the exception without objection, had the effect of enlarging the pleadings, Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592, compare Duplain v. Wiltz, La.App., 174 So. 652, and (2) the authority of Jones to bind the defendant corporation for the sale of its real estate without a mandate in writing was not merely a matter of defense but one vital to plaintiff's cause of action. Jones v. Shreveport Lodge No. 122 B.P.O.E., 221 La. 968, 60 So.2d 889 and cases there cited.

■ We say "cause of action" as distinguished from "right of action" for the reason that these two exceptions have been the subject of some confusion as they are invariably employed indiscriminately by members of the bar. Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain his suit, i. e., his capacity to sue or his interest in the subject matter

of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. Outdoor Electric Advertising v. Saurage, 207 La. 344, 21 So.2d 375; Termini v. McCormick, 208 La. 221, 23 So.2d 52 and Bartholomew v. Impastato, La.App., 12 So.2d 700. The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist. Soniat v. White, 153 La. 424, 96 So. 19; Schmidt v. Conservative Homestead Association, 181 La. 369, 159 So. 587; Duplain v. Wiltz, supra and La Casse v. New Orleans, T. & M. R. Co., 135 La. 129, 64 So. 1012.

In the case at bar, the defendants make practically the same contentions under their exception of no cause of action as under their so-called exception of no right of action. Those contentions, substantially stated, are that Jones was not authorized by the Board of Directors of St. Denis Securities Co. to offer to sell the land and that the letters relied on by plaintiff evidence mere preliminary negotiations and do not establish a written promise of sale.

These points are properly presented under the exception of no cause of action, the legality of which is to be governed, not by plaintiff's allegations, but upon the documents which he has filed in response to the prayer for oyer. Noble v. Plouf, 154 La. 429, 97 So. 599. This is so because plaintiff's demand, being founded on a breach of contract to sell real estate, must be supported by written evidence of a sale or promise of sale, in order to be actionable. Articles 2275, 2440 and 2462 of the LSA–Civil Code; Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7 and Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682.

Guided by these fundamental principles, we address our attention to the correspondence relied on by plaintiff for its cause of action. Mutual promises to sell and purchase are alleged to have resulted from three letters dated March 26th, 27th and 28th 1951, which are said to be the culmination of earlier negotiations.

The letter of March 26th 1951 was written by the defendant, Jones, at Natchitoches, addressed to Norman K. Martin, % Roy O. Martin Lumber Co., Alexandria. It states:

"Dear Sir:

"On my return home I find your letter of 15th, inst I just returned home on Friday, after spending more than ten days on a trip to Denver, Colorado.

"My previous offer to you for the approximate 1400 acres of land, were as follows—

"A warranty title to approximately 1200 acres for $15,000.00. 220 acres

without warranty for $500.00. With full reservation of the rentals and royalties in the oil and gas lease now on the 1200 acre tract. You stated that you did not care for any reservations to be granted in the oil and gas lease. Then we will sell you the entire tract of lands, for a consideration of $18,000.00, transferring to you our entire interest in the oil and gas lease, which has three years yet to run. This offer is made, without warranty of title to the 220 acres tract. The purchaser to pay expenses of the sale and title investigation if such is desired. This offer includes all our holdings south of the Concrete Highway and west of the Gravel Highway.

"If you are still interested will be glad to give you a contract of sale within reasonable period of time. And, will be glad to hear from you in regard to the offer.

"Yours very truly,"

On the following day, March 27th 1951, Roy O. Martin, President of plaintiff corporation, wrote to Jones as follows:

"Dear Mr. Jones:

"We wish to acknowledge receipt of your letter dated March 26th, addressed to my son, Norman. Norman had to go out of town this morning, and has asked that I reply thereto.

"Regarding your offer of $18,000.00 for the entire tract of land, consisting of approximately 1400 acres, and being all of your holdings South of the concrete highway, and West of the Gravel Highway, and which has been under discussion and which we have looked at from time to time, located in the Parish of Natchitoches, near the town of Natchitoches, *Norman desires to accept this offer—either for the account of himself or for the account of the Roy O. Martin Lumber Company, Inc. in which he is a stockholder and director; this is to be determined at the time of the closing of the sale.* It is understood that we will pay the expenses involved, such as title investigation, etc., and Notary fee. We, however, have our own Notary here, and will take care of this ourselves.

"There is to be no mineral reservation of any kind, except as stated in your letter, that the property is under lease, which has three years yet to run; but, the benefits from this lease will inure to us. However, it is understood that no other mineral interest has been disposed of or is outstanding against any of the property in any way.

"Norman has an engagement in New Orleans tomorrow, and will be in the City until Thursday. *He will, however, endeavor to contact you sometime Friday as to a suitable time to get together with you, such as Mon-*

*day, April 2nd, to meet and draw up a contract covering these matters until the title is checked, which should be only a short time. Therefore, please consider this a definite deal, subject only to our acceptance or rejection of the title.*

"Yours very truly,"

(Emphasis ours).

The next day, March 28th 1951, Jones addressed another letter to Norman Martin, % Roy O. Martin Lumber Company, which reads:

"Dear Sir:

"This will acknowledge receipt of yours of 27th, inst in regard to the proposition of the sale of lands.

"This offer and the sale will be made, subject to the timber sale to the Ouishata Lumber Company, Inc., made on March 8th 1951, as shown in Conveyance Book 213 folio 453, as per copy recently in your possession and latter returned to me.

"There are also several easements to the Tennessee Gas Transmission Company, as shown by the records of this Parish, executed for the past several years, and the lands will be sold subject to these contracts and easements to the Tennessee Gas Transmission Company.

"*Will be expecting to meet your representative here on Friday of this week, to arrange a contract of sale, and will ask that the consumation of the sale be arranged to be completed as early date as convenient.*"

"Yours very truly,"

(Emphasis ours).

It is perfectly plain to us that the foregoing letters are insufficient to constitute a binding contract to sell and purchase. Whereas, the letter of March 26th is undoubtedly an offer by Jones to sell the land stated therein for $18,000,[1] the communication of March 27th, written by Roy O. Martin, plaintiff's President, falls far short of being an unqualified acceptance of it. It appears from that letter that Roy O. Martin undertook to act for his son, Norman Martin, and he states that Norman is accepting Jones' offer "either for the account of himself or for the account of Roy O. Martin Lumber Company, Inc. in which he is a stockholder and director; this to be determined at the time of the closing of the sale". Obviously, Norman Martin was not bound by this alleged acceptance for, according

---

1. On the other hand, the offer, as pointed out by the District Judge, is not enforceable against the defendant corporation as Jones was not vested with written authority to sell the land. Articles 2275, 2276, 2992, 2997 of the LSA–Civil Code; Turner v. Snype, 162 La. 117, 110 So. 109 and authorities there cited; Di Christina v. Weiser, 215 La. 1115, 42 So.2d 868 and Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682.

to its terms, he was given the prerogative of deciding whether he would be personally responsible or whether he was accepting for plaintiff corporation. Under these circumstances, an action for specific performance against him would have been unavailing. As a matter of fact, it is shown by another exhibit offered by plaintiff, the so-called "Option to Purchase", which was afterwards tendered by Norman Martin to Jones for execution by St. Denis Securities Company (but never signed), that the purported purchaser was to be another corporation called Martin Development Company, Inc.

But, above this, the letter of March 27th 1951, while stating that Jones should consider it as "a definite deal", declares that Norman Martin, who was not in Alexandria at the time, would endeavor to contact Jones upon his return "to meet and draw up a contract covering these matters until the title is checked, which should be only a short time". Thus, as the letter indicates, the negotiations and arrangements are tentative and incomplete and are to culminate in a written contract for the sale and purchase of the land to be executed when Norman Martin returned. Such being the understanding, neither party could be bound until the envisioned contract was signed. Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89; Ferre Canal Co. v. Burgin, 106 La. 309, 30 So. 863; Barrelli v. Wehrli, 121 La. 540, 46 So. 620; Timken v. Wisner Estates, 153 La. 262, 95 So. 711 and Evans v. Dudley Lumber Co., 164 La. 472, 114 So. 101.

Not only did the letter of March 27th 1951 contemplate the execution of a formal contract to sell and purchase but it is clear that Jones understood that such a contract would be made—for, in his letter of March 28th addressed to Norman Martin, he says that he will be expecting to meet him "here on Friday of this week, to arrange a contract of sale and will ask that the consumation of the sale be arranged to be completed as early date as convenient". And it is further shown by the correspondence that, in conformity with these two letters, Norman Martin went to Natchitoches and presented to Jones the so-called Option to Purchase, which had been prepared by his attorney but which, as aforesaid, was never executed by defendants. This, in itself, evidenced Norman Martin's intent not to bind either himself or plaintiff or Martin Development Co. absolutely but, rather, to obtain for $250 (the price of the option) the right to purchase the land for $18,000.

The foregoing factors suffice to demonstrate that plaintiff has no actionable claim against either St. Denis Securities Company or Jones individually. However, counsel maintains that Jones is personally liable to plaintiff for damages because he wrongfully represented that he, as President of defendant corporation, was vested with full power to dispose of the

lands. Since we find that there was never a binding contract, the question of Jones' authority, or lack of it, is immaterial.

The judgment appealed from is amended by dismissing plaintiff's suit on the exceptions of no cause of action and, as thus amended, is affirmed.