99 So.2d 831 (1957)
Lita RICHARD et al.
v.
NATIONAL SURETY CORPORATION et al.
No. 4532.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
Rehearing Denied February 3, 1958.
Writ of Certiorari Denied March 17, 1958.
*832 Pugh & Boudreaux, Lafayette, for appellants.
Mouton Champagne & Colomb, Davidson, Meaux, Onebane & Nehrbass, Lafayette, for appellees.
ELLIS, Judge.
On August 8, 1955, Roy J. Lester was electrocuted while working for the Universal Electric Construction Company who, in turn, had a contract with the City of Lafayette to erect and construct major electrical power lines improvements in and about the City of Lafayette, Louisiana, and particularly to make certain power line installations, on the property of the defendant city at its new City Power Plant. As a result of Lester's death this suit was filed by his widow individually and for the use and benefit of her minor son, John William Lester, against the City of Lafayette and its insurer as third party responsible because of the alleged negligence of the city.
Counsel for the defendants filed an exception of vagueness on the ground that the petitioners had failed to allege a specific manner in which the deceased was injured. This exception was not passed upon in view of the lower court's sustaining of an exception of no cause and right of action.
Counsel for defendants also filed an exception on the ground that the plaintiffs' "Petitions do not disclose a right or cause of action against exceptors in that the deceased was an employee of a sub-contractor of the City of Lafayette and, consequently, his sole and exclusive remedy would be under the compensation laws of the State of Louisiana." The Lower *833 Court, upon the theory that the defendants had filed an exception of no right of action, over the objection of counsel for plaintiffs, which objection was made general by order of the court, allowed the specification for additions to the electric distribution system for the City of Lafayette, Louisiana, utility system which formed the basis of the contract between the city and the Universal Electric Construction Company and also heard testimony.
The Lower Court ordered the case to be submitted and the parties to file briefs. After consideration of the record judgment was rendered in favor of the defendants and against the plaintiff maintaining the exception of no right and no cause of action filed herein by the defendants and dismissing plaintiffs' suit at their costs. From this judgment the plaintiffs have appealed.
The first question which this court must decide is whether the grounds which were stated by exceptors as a basis for their exception of no right or cause of action render the exception as one of no cause of action only, as contended by counsel for plaintiffs. If the exception is one of no cause of action then, of course, no testimony was admissible.
This court had occasion in two recent decisions to consider this question. In Leteff v. Maryland Casualty Company, La.App., 82 So.2d 80, 82, the lower court, after hearing evidence, sustained the exception of no right and cause of action filed by the defendant, Maryland Casualty Company. In dealing with the question in this case we stated:
"Before any evidence was taken, both plaintiff and codefendant Ventress, Jr., objected to the admission thereof on the ground that the exception filed by defendant insurer was in reality an exception of no cause of action, although denoted as an exception of no right and of no cause of action.
"It is well settled that there is a distinction between the exception of no right of action, and the exception of no cause of action. As stated in Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257, at pages 258-259:
"`Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain his suit, i. e., his capacity to sue or his interest in the subject matter of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. Outdoor Electric Advertising v. Saurage, 207 La. 344, 21 So.2d 375; Termini v. McCormick, 208 La. 221, 23 So.2d 52 and Bartholomew v. Impastato, La.App., 12 So.2d 700. The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist. Soniat v. White, 153 La. 424, 96 So. 19; Schmidt v. Conservative Homestead Association, 181 La. 369, 159 So. 587; Duplein v. Wiltz, supra, La.App., 174 So. 652 and La Casse v. New Orleans, T. & M. R. Co., 135 La. 129, 64 So. 1012.'
* * * * * *
"We are reinforced in these conclusions by Judge McCaleb's learned discussion of these two exceptions, in which he states; Duplain v. Wiltz, La.App., 174 So. 652, at pages 654-655:
"`The ground upon which the defendant bases her exception of no right of action is that she is not the owner of the property in which the plaintiff was injured. This question is purely one of fact and does not militate against plaintiff's legal right to maintain the action. If, on the trial *834 of the merits of the case, it is decreed that, as a matter of fact, the defendant is not the owner of the premises, and therefore not responsible for the injuries resulting from its vices and defects, such finding will not be destructive of plaintiff's inherent right to sue the defendant, but will serve to show that the plaintiff was without justification or cause to enforce her right against the defendant. In other words, we think that there is a vast difference between the right of action, to which plaintiff is entitled as a matter of law, and the resultant liability vel non of the person against whom she causes this right to be asserted. The right to sue is conferred either by statute or the jurisprudence, whereas the cause to sue is legally determined after investigation of the facts presented. Here, the real challenge is not made to plaintiff's right to sue but is truly aimed against the legal lack of cause or reason for the action.'"
In the case of Maryland Casualty Company v. Gulf Refining Company, La.App., 95 So.2d 734, 735, we dealt with the same subject matter as is before the case at bar, and we stated:
"Defendants filed exceptions of no right and of no cause of action.
"Over objection of counsel for the plaintiff, the District Court permitted certain evidence to be received in disposing of the alleged exception of no right of action; and then sustained same, dismissing plaintiff's suit; hence this appeal.
* * * * * *
"Stated otherwise, defendants seek to explain by extraneous evidence that J. W. Stewart, `distributor of Gulf Refining Company products' was an independent contractor of Gulf rather than merely a buyer of its products.
"If the defense raised by this exception relates to plaintiff's `right of action' rather than to (as plaintiff argues) his `cause of action', the District Court correctly admitted evidence over plaintiff's objection in reaching judgment thereupon; for while extraneous evidence may be introduced in the determination of an exception of no right of action, it is equally well settled that the exception of no cause of action is triable on the face of the papers alone, admitting for purposes of the exception all well-pleaded allegations of the petition. Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257.
"The learned District Judge held that the exception in question was levelled at plaintiff's right to exercise the remedy, as distinguished from the remedy itself, and was therefore properly speaking an `exception of no right of action', in the decision of which evidence might be taken. It is admitted that if this is an `exception of no cause of action', that the pleadings taken as true require its overruling, and the remand for trial on the merits.
"Since the time of the opinion below, three decisions have been rendered by the Supreme Court and ourselves which have clarified what was admittedly a clouded question at the time; Wischer v. Madison Realty Company, 231 La. 704, 92 So.2d 589; Rapides Grocery Co. v. Vann, 230 La. 829, 89 So.2d 359, and Leteff v. Maryland Casualty Co., La.App. 1 Cir., 82 So.2d 80, certiorari denied.
"As these cases all emphasize, the exception of no right of action is the exception of want of interest or capacity and relates `specifically to the person of the plaintiff' and its function `is to raise the question of whether a remedy afforded by the law can be invoked by a particular plaintiff'; *835 whereas the exception of no cause of action `relates generally to the action', and its function `is to raise the general issue as to whether any remedy is afforded by the law' to the plaintiff or to anyone similarly situated, summarizing and quoting from the Wischer case, 92 So.2d 589, at page 591. These cases indicate that a right of action is remedial, the right to pursue a judicial remedy, that is, the right to institute and maintain a suit for a certain object; a cause of action is substantive, the entire state of facts that give rise to an enforceable claim, or in other words, the actual right or obligation which is sought to be enforced.
* * * * * *
"The defense is not that Langton or plaintiff, his subrogee, has no legal right to institute the suit; it is that they have no legal right to recover, i. e., no cause of action: the former type of defense raising questions of interest or capacity to institute the suit, is alone triable by exception of no right of action in limine litis; the latter, raising questions of whether legal recovery can be had by one given legal standing or right to institute the action, is subject to an exception of no cause of action if it can be determined on the face of the pleadings, but if evidence is necessary is triable on the merits along with the other factual defenses to plaintiff's claim.
"As we stated in Leteff v. Maryland Casualty Co., La.App., 82 So.2d 80, at page 83, `Our inquiry herein therefore is not directed to the person or capacity of the plaintiff, but to whether or not under these facts any one had a cause of action. Thus defendant questions not plaintiff's right of action, but his cause of action. Plaintiff's objection to admission of any testimony should have been sustained, and defendant's exceptions of no right and cause of action should have been overruled.'
* * * * * *
"Likewise insignificant in our opinion, in the sometimes use of the word `right' (E.G., LSA-R.S. 23:1101, referring to the `claim or right of action of the injured employee * * * against such third person') describing the cause of action of the injured employee or his subrogee against the third party tortfeasor. It is apparent from the context in each instance that the term `right' is used in its generic sense of a legally enforceable right (including that conferred by a cause of action); rather than as a term of art in the technical phrase `right of action' in Louisiana practice and procedure, referring to the legal right to maintain an action or to bring suit without reference to whether the claim (cause of action) upon which founded is valid and enforceable. For a roughly similar distinction in some common law jurisdictions, see 37A Words and Phrases, Right; Rights, p. 353 et seq., and Right of Action, p. 383 et seq."
The pertinent provisions of the relevant sections of the Louisiana Workmen's Compensation Law necessary in arriving at an answer to the question of whether the exception filed by defendants is really one of no cause rather than one of no right of action, and if in reality no cause of action the following are relevant thereto and we quote:
"The rights and remedies herein granted to an employee or his dependents on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relations." LSA-R.S. 23:1032.
"Where any person (in this section referred to as principal) undertakes *836 to execute any work, which is a part of his trade, businesss, or occupation or which he has contracted to perform and contracts with any person (in his section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to the employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor." LSA-R.S. 23:1061.
"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury." LSA-R.S. 23:1101.
While the language used by the defendants when they filed their exception would indicate that they were filing an exception of no right and also of no cause of action, the ground upon which it was filed limits the exception to one or the other, for the language used by the defendants as a basis of the exception is as follows: "in that the deceased was an employee of a sub-contractor of the City of Lafayette and, consequently, his sole and exclusive remedy would be under the Workmens Compensation laws of the State of Louisiana." The language quoted limits the defendants' exception to one of no cause of action. What the defendant is saying is that the plaintiff does have a cause of action exclusively for workmen's compensation and is denied a cause of action under and by virtue of the above quoted pertinent and relevant sections of the compensation law, viz., LSA-R.S. 23:1032 and 23:1061 and 23:1101.
Defendants' exception raises no inquiry relating to the person of the plaintiff or "to whether plaintiff belongs to the particular class in whose exclusive favor the law extends a remedy," Vegas v. Cheramie, La.App. 1 Cir., 69 So.2d 66, 68. Defendants' exception questions solely the existence of a legal remedy for the particular cause of action set forth by plaintiff in her petition. Under the rules or principals set forth in the authorities heretofore cited, and the specific wording of the defendants' exception, it is only an exception of no cause of action and must under our law be decided on the face of the plaintiff's petition. No testimony was admissible and cannot be considered by this court.
We will now consider the defendants' exception of no cause of action. Keeping in mind the pertinent and relevant portions of our compensation act previously quoted *837 herein we now quote the material allegations of the plaintiff's petition bearing upon the exception of no cause of action. These allegations are as follows:
"II. The defendant, City, is the owner and in complete possession and control of property situated at the Southeasterncorner of the intersection of the Airport Road and Pinhook Road (U. S. Highway 90) in the City of Lafayette, Lafayette Parish, Louisiana, which property is commonly referred to as the `New City Power Plant' on which it operated a large steam, electrical power plant.
"III. The said City had engaged an electrical contractor, the Universal Electric Construction Company, to erect and construct major electrical power line improvements in and about the City of Lafayette, Louisiana, in general, and in particular make certain major power line installations of a 13,800 volt system on the property of the defendant, City, at the new City Power Plant.
"IV. Among the employees of the said Universal Electric Construction Company was the late husband and father of your petitioners, Roy J. Lester, who on or about August 8, 1955, while in the scope and course of his employment with the Universal Electric Construction Company was required to climb a power line pole near the top of which the city had built a death trap consisting of many uninsulated wires, transformers and switches, very heavily charged with electric current, and as a result of having to work in this death trap, he received painful and severe shocks and burns which directly and proximately caused his death three days thereafter, all as is more fully set out hereinafter.
"V. The type of work being done by the employees of Universal Electric Construction Company, and Roy Lester in particular, at the time he received the injuries which caused his death, was not a part of the regular business of the defendant, City, or usually done by employees of the defendant, City.
"VI. At the time of his injuries the decedent, Roy J. Lester, was on the premises of the defendant, City, as its invitee and was at such time engaged in performing services for the defendant, City, pursuant to a contract between his employer, Universal Electric Construction Company, and the said defendant, City."
It is evident from reading plaintiffs' petition and particularly the articles above quoted that a studied and skillful attempt has been made to avoid the allegations of facts that could be interpreted as setting forth that the deceased was an employee of a contractor of the City of Lafayette, Louisiana, in connection with the performance of work which was part of the regular trade and business of the City of Lafayette, Louisiana, so as to preclude the plaintiff from recovering in tort against the city and its insurer under the above quoted sections of our compensation act and the authorities that will be cited hereinafter. The plaintiff has failed in this attempt for under Article II, supra, she has alleged that the City of Lafayette is the owner of the "New City Power Plant on which it operates a large steam, electrical power plant." This Article alone, when considered in connection with the legislative act under which the City of Lafayette was incorporated, is sufficient to show that the latter is engaged in the business of furnishing electric power to the residents of the City of Lafayette, and that the erection, maintenance, and operation of the city-owned power plant is part of the regular trade and business of the City of Lafayette. This Court can take judicial notice and cognizance of the acts of the Legislature under which the City of Lafayette was incorporated and all *838 amendments thereto. See Clark v. City of Opelousas, 147 La. 1, 84 So. 433.
The City of Lafayette, of course, is a municipal corporation and it has its existence as a result of a legislative enactment, Act 310 of 1914 is entitled: "An Act to incorporate the City of Lafayette in the Parish of Lafayette, * * * to define its powers, and those of its officers, to exempt all property, real and personal, firms and corporations within the corporate limits from the payment of certain taxes and licenses, and to repeal all acts inconsistent or in conflict therewith".
Act number 310 of the legislature of 1914 was amended by Act Number 52 of 1936. Under Section 4 of the said Act the Board of Trustees were granted authority and power to "erect, purchase, maintain, operate water works, electric lights and telephone plants and to regulate the same," to prescribe the rates at which water, electric lights and telephone service shall be supplied; to acquire by purchase, bequests, lease or donation in the name of the municipality, suitable grounds, within or without the corporate limits upon which to erect waterworks, electric lights and telephone plants and the right-of-way for laying water pipes and for the erection of electric lights and telephone poles, lines, and supports from such works and plants to the municipality; to extend such right-of-way from time to time; and for those purposes, also, to exercise the right of eminent domain. To build and maintain electric and water lines and distribution system, within and without the corporate limits and to sell and distribute electricity, power and water within the corporate limits and outside of the corporate limits only if a surplus exists over and above the fairly estimated maximum demand within the corporate limits.
Continuing with the allegations of plaintiff's petition we find that it is alleged that the city had engaged the Universal Electric Construction Company to erect and construct major electrical power line improvements in and about the City of Lafayette, Louisiana, and in particular make certain major power line installations on the property of the city, at its "New City Power Plant" and that among the employees of the contractor was the deceased who on the date of his accident and death was required to climb power line poles at the top of which "The City had built a death trap consisting of many uninsulated wires, transformers and switches, very heavily charged with electric current, * * *". We next find an allegation that the type of work that was being done by the deceased employee of the contractor, Universal Electric Construction Company, at the time that he received the injuries which caused his death "was not a part of the regular business of the defendant, City, or usually done by employees of the defendant, City." The plaintiff contends that by this allegation which under an exception of no cause of action must be taken as true, that he has eliminated any question of the deceased at the time of his death performing any duties which were a part of the regular business of the city or usually done by employees of the city and has, thus, avoided the effect of the law above quoted and jurisprudence to be hereinafter quoted, so as to render his petition subject to dismissal under the exception of no cause of action. However, practically the same allegation was made in the case of Thibodaux v. Sun Oil Company, La.App., 40 So.2d 761, 765, and this court stated with regard to such an allegation and also in holding that the exclusive remedy of the plaintiff under the workmen's compensation laws of the State of Louisiana that:
"Regardless of the fact that well pleaded facts for the purpose of considering exceptions of no right and of no cause of action are to be considered as true yet the conclusions of the pleader are not to be so considered and do not take the place of facts. It is our opinion that the allegations that Chance and Homco were engaged in highly specialized work not usually done by *839 Sun Oil Company are * * * merely self serving declarations.
"It is apparent from the Thibodaux petition that the decedent was employed by Chance, which company was engaged in the drilling of oil wells and work incidental thereto, for example the reworking or working over of oil wells. In fact, on the day of the accident Chance was engaged in the reworking of an oil well belonging to the Sun Oil Company. This work involved drilling and other work incidental thereto. From the admitted facts supra, Sun Oil Company was engaged in the business of exploring for oil and the mining of oil. It is clear that a part of the business, trade and occupation of the Sun Oil Company was the drilling of wells, and the reworking of wells if necessary in search for oil and/or its production. Therefore, it follows that Chance was engaged in the work the very nature of which was a part of the business, trade and occupation of the Sun Oil Company. We cannot view it in any other light but that Chance was the contractor of Sun Oil Company in carrying out a part of the business, trade or occupation of the Oil Company and that the provision of Section 6, Paragraph 1 of the Compensation Act is applicable and that the remedy of Thibodaux is that provided exclusively by Section 34 of the Compensation Act, supra. If Chance had been an irresponsible contractor, without compensation insurance, we venture to say that plaintiff would be contending that Sun Oil Company was liable in compensation rather than in tort.
"With reference to the Baker suit, it is to be noted that the work being done by Homco was the `fishing out' of well tools and implements stuck in the same well in question. Baker was in charge of the operation using the employees and the equipment of Chance, the contractor of Sun Oil Company. The loss or sticking of tools in an oil well is one of the hazards of drilling such a well. In order to continue the operation of drilling and in order not to lose the work which has been done, it is necessary and in order that such tools be `fished out'. The `fishing out' of the tools in this well is so closely related to the actual drilling of the well as to become a component part of it. We have no allegation that the Sun Oil Company is engaged in this type of work insofar as the general public is concerned; however, it is a fact that it is interested in seeing that lost or stuck tools are `fished out' of any oil wells belonging to it. It is in furtherance of its business to see that such operations are carried out. To our mind, it is so closely related to its business that it can be said to be a part of its operation in the production of oil. The mere fact that it prefers to engage the service of a company which specializes in this type of work instead of employing directly `fishing tool' experts makes no difference in the application of the legal problem involved. Section 6, paragraph 1 of the Compensation Act applies and in accordance with Section 34, the sole remedy of Baker is for compensation under the Act."
With Article V in effect stricken from plaintiff's petition as being a conclusion of the pleader, it leaves the petition as setting up facts stronger than in the Sun Oil Company case, supra. In plaintiff's petition he sets up that the city is the owner and in complete possession and control of the property on which is situated the "New City Power Plant" and that it is operating this large steam, electrical power plant and that it had built a death trap consisting of many uninsulated wires, transformers and switches on which the deceased as an employee of the Universal Electric Construction Company, who had contracted to do the work on the city power lines, was working at the time of the accident. Beyond a doubt these allegations show that the City of Lafayette *840 was authorized to and did, as a part of its regular business, operate a power plant which it owned and located on city property for the purpose of supplying electric power to the inhabitants of the City of Lafayette primarily, in accordance with the power vested in it under the legislative act by which it was incorporated, and that it had contracted with the Universal Electric Construction Company to erect or construct major electrical power line improvements to its property, although it was empowered if it so desired to do this work itself, and that the deceased was an employee of the contractor and at the time of his accident was working on a major line which the city itself had previously built, as an employee of the Universal Electric Construction Company.
A case which follows the Sun Oil Company case was Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137, 144, in which the Supreme Court of Louisiana stated:
"Under the Workmen's Compensation Act and the Jurisprudence of this state, the exclusive remedy of the employees of the contractor against the principal, as those two terms are used in the act, is for workmen's compensation, and there is no remedy in tort against the principal, as the principal is not a third person under the provisions of Section 7 of the act. (Citing case.) The effect of Section 6 is that the principal shall be considered the employer of the employees of the contractor, in contemplation of the statute, so that such employees shall have the right to demand compensation from the principal, and this is their exclusive remedy, and the principal cannot be held liable to the employees of the contractor in tort."
Also in the case of Coal Operators Casualty Company v. Fidelity & Casualty Co. of New York, 223 La. 794, 66 So.2d 852, 860, our Supreme Court stated:
"It is our conclusion that the exclusive remedy to Ferguson, the injured employee, against either Maddox or Wheless was under the all-embracing terms of the Louisiana Workmen's Compensation Act; that Maddox and the plaintiff's insurer were primarily liable to plaintiff for workmen's compensation and medical expenses, and Wheless was only secondarily liable; that if Wheless had been forced to pay Ferguson Compensation and medical expenses, Wheless would have had the right to obtain re-imbursement therefore from Maddox, but, certainly, Maddox had no such right against Wheless. Plaintiff's rights as Workmen's Compensation insurer of the immediate employer are derived from and are no greater than those of Maddox and Ferguson, and, since there could not be a recovery in tort against Wheless and his insurer, neither could plaintiff recover judgment against these defendants. Wheless is not a third person within the meaning of Section 7 of the Workmen's Compensation Act, and, being secondarily liable to Ferguson for compensation, with Maddox primarily responsible, Maddox's compensation insurer does not possess the right of indemnification from Wheless and his insurer."
See also Turner v. Oliphant Oil Corporation, La.App., 200 So. 513; Isthmian S.S. Co. of Delaware v. Olivieri, 5 Cir., 202 F.2d 492; Clementine v. Ritchie, 1 La.App. 296; Wynn v. Fidelity & Casualty Co. of New York, La.App., 85 So.2d 315; Sisk v. L. W. Eaton Company, Inc., La.App., 89 So.2d 425, 428.
We have been presented with practically the same argument in the brief of counsel for plaintiff in the case at bar as was presented to us by defendants-appellees in the Sisk case, supra, and in which we expressed our admiration "for the unusually eloquent and scholarly brief presented by counsel for plaintiff-appellant in persuasive support of *841 its argument that the Compensation Act does not bar this suit in tort."
The failure to incorporate in this opinion the forceful and persuasive arguments presented by plaintiff's counsel in their brief is not due to a lack of recognition of the merit in the contention that our workmen's compensation act within its protective scope should be liberally construed but should be strictly construed in order to avoid depriving the injured employee of a right in tort, but is due to the futility of such action as this court is bound by the interpretation of the Louisiana compensation law as expressed in the cited opinions of the Louisiana Supreme Court.
For the above and foregoing reasons the exception of no cause of action is hereby sustained and the plaintiff's suit dismissed at her cost.
As amended the judgment of the district court is affirmed.