KLIEBERT, Judge.
This is an appeal by the alleged biological father, Glenn E. Maxwell, from a judgment dismissing his suit to annul a judgment of adoption granted to the natural mother, Darlene Marie LeBlanc Cooper Wester, and her current husband, Robert Wester. The trial court dismissed plaintiffs suit on an exception of no right or cause of action finding that the natural father had no right of action or a cause of action to seek to nullify the previously granted judgment of adoption. We affirm.
On November 25, 1981 Darlene LeBlanc Wester and her current husband filed a petition to adopt Michelle Marie Maxwell. The petition alleged Mrs. Wester was the natural mother of the child born out of wedlock and that her current husband wished to adopt the child. The petition was served on the Department of Health and Human Resources (DHHR). The DHHR gave notice of the adoption to Mrs. West-er’s former husband, obtained his consent to the adoption and made a confidential adoption report to the court, all as required by the adoption statute — R.S. 9:421, et seq.
A final judgment of adoption was rendered on February 1, 1982, pursuant to the provisions of La.R.S. 9:434 without first entering an interlocutory decree.
Thereafter, on October 18, 1982, Maxwell, alleging lack of notice of the adoption proceeding and himself to be the biological father of the child, filed suit to set aside the judgment of adoption and for damages of $55,000.00. The Westers, on May 18, 1983, filed a motion to have the suit consolidated for hearing with a suit by Mr. Maxwell seeking to set visitation rights with the child. The motion to consolidate was denied.[1]
Then, following a hearing and the taking of evidence on exceptions, the trial judge (in a different division) without ruling on the exception and predicated on the belief *818 Maxwell was entitled to notice of the adoption proceedings, ordered the suit consolidated with the adoption proceeding, transferring it to the trial judge who had conducted the adoption proceeding.
Following the transfer, the adopting parents refiled an exception of no right of action and the exception of no cause of action in the consolidated proceedings where they were reheard and reargued. At this hearing, the parties stipulated into evidence in the consolidated proceedings the transcript of the testimony previously taken on the exceptions.
As so constituted, the consolidated record shows the adopted child was born less than 300 days after the divorce of the natural mother and at a time when the alleged biological father was married to a woman other than the mother.[2] A supervisor with the DHHR testified that he only notified, contacted and obtained the consent of the former husband of the natural mother of the child because as he understood the DHHR’s obligation, it was to notify and obtain the consent of the legal parents only. He also testified the allegations of the petition for adoption made him aware the former husband of the mother was the presumed legal father of the child and made no effort to notify or obtain the consent of Maxwell, whose name was shown on the birth certificate as the father, because the allegations of the petition also made him aware Maxwell was married when the child was born.
The exception of no right of action and the exception of no cause of action have different purposes and foci of inquiry. The exception of “no cause of action” challenges the legal sufficiency of the petition, while the exception of “no right of action” questions whether the law affords a remedy to the plaintiff. Taylor v. Castille, 318 So.2d 106 (La.App. 3rd Cir.1975), writ denied 321 So.2d 366 (La.1975); Roy O. Martin Lumber Co., Inc. v. Saint Denis Securities Co., Inc., 225 La. 51, 72 So.2d 257 (1954). The exception of no right and cause of action does not exist and at the election of the exceptor it should be treated as an exception of “no right of action” or “no cause of action.” Bamber Contractors, Inc. v. Henderson Bros., Inc., 345 So.2d 1212 (La.App. 1st Cir.1977). Prior to the hearing the exceptor here elected to pursue the exception of no right of action.
The trial judge maintained the exception and delivered from the bench a well reasoned statement as to why the mandated presumptions of the Civil Code required him to do so.
On appeal, counsel for Maxwell contends that the presumption “a child born less than 300 days after dissolution of the marriage is presumed to have been conceived during the marriage” established by Civil Code Article 185 and the presumption of Civil Code Article 184 that “the husband of the mother is presumed to be the father of all children born or conceived during the marriage” do not constitute a bar to his action. He argues that under the provisions of Civil Code Article 186, i.e., “the husband of the mother is not presumed to be the father of the child if another man is presumed to be the father” the presumptions of Articles 184 and 185 are rebuttable and since there are no statutory bases for a biological father to prove paternity, the court should rely on equity, as required by Civil Code Article 21 to permit him to prove up his paternity. We do not agree.
In Taylor v. Taylor, 295 So.2d 494 (La.App. 3rd Cir.1974), writ denied 299 So.2d 799 (La.1974), the alleged biological father’s suit to be recognized as the father of two children born to the mother while he cohabited with her and whom he subsequently married, was met by an exception of no right of action. The exception was grounded in the fact the mother was legally married at the time the children were conceived, thus raising the legal presumption of Civil Code Articles 184 and 185, i.e., her husband was the father. Although the court maintained the biological father’s right to establish rights of visitation, the exception of no right of action was main *819 tained insofar as he sought to prove his paternity of the children. In reaching this conclusion, the organ of the court quoted the writer in Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 at page 622 (1972), as follows:
“The codal provisions prevent the disavowal of paternity except within extremely narrow limits, and then only if done promptly after the birth. The policy of the State, as found in the statutes and as perpetuated in the jurisprudence, has been to protect innocent children against attacks upon their pa-ternity_” (Citations omitted) (Emphasis supplied)
and then went on to say, 295 So.2d at page 496:
“Regardless of the strong equitable factors favoring plaintiffs demands in this case, we are constrained to hold under the above jurisprudence of our Supreme Court that since there has been no disavowal action by Stelly, he is presumed to be the legitimate father of these children. No one except Stelly can contest his paternity. Therefore, the plaintiff has no right of action to demand that the court recognize him as the legitimate father of these children. It is obvious that a child can have only one legitimate parent. Burrell v. Burrell, 154 So.2d 103 (1st Cir.1963).” (Emphasis Added)
In the present case the presumed legal father of the adopted child has made no effort to disavow the child, therefore, under the above stated public policy of the State, neither Maxwell nor anyone else has a right of action to attack the legal presumption that the legal husband of the mother is the father of the child.
Although Civil Code Article 186 purports to modify the presumption created by Article 184, the legislature did not provide the necessary method or mechanism for an alleged biological father to attack the legitimacy of a child by disavowing the paternity of the legal father. We might add that in our view the better interest of the child and, therefore, the just and equitable policy is to prohibit bastardizing innocent children for the sake of satisfying the desires of the person who conceived the child in an illicit relationship.
For the reasons stated, therefore, we affirm the decision of the trial court.
AFFIRMED.

. Prior to the filing of the motion to consolidate, the State Supreme Court on April 4, 1983 handed down an opinion in Maxwell v. LeBlanc, 434 So.2d 375 (La.1983) which reversed the trial court’s dismissal of Maxwell’s suit to establish visitation rights (affirmed by the Court of Appeal in an unpublished opinion) and remanded the case to the trial court for further proceedings.

. Maxwell was not divorced from his wife until after the birth of the child.