JOAN BERNARD ARMSTRONG, Chief Judge.
 

 LThe plaintiff-appellant, Touro Infirmary, appeals two judgments, each in favor of one of the many defendants it sued in this matter. The first is a judgment of February 3, 2009, granting the exception of no cause of action filed by the defendant-appellee, Pacific Life & Annuity Company (hereinafter “Pacific Life”) and dismissing Touro’s claims with prejudice. The second is a judgment of February 4, 2009, granting the exception of no cause of action to Touro’s Supplemental and Amended Petition for Damages filed by the defendant-appellee, Fiserv Health Plan Administrators, Inc. (hereinafter “Fiserv”) and dismissing Touro’s claims with prejudice.
 
 [1]
 

 We review the exception of no cause of action
 
 de novo.
 
 In
 
 Reis v. Fenasci & Smith,
 
 93-1785 (La.App. 4 Cir., 4/14/94), 635 So.2d 1319, 1321, this Court explained that:
 

 The exception of no cause of action must be decided on the face of the petition and no evidence may be introduced to support or controvert the exception.
 
 Charia v. Hulse,
 
 619 So.2d 1099 (La.App. 4th Cir.1993); La. C.C.P. Art. 931. All well pleaded allegations of the petition and any annexed documents must be assumed as true, and any doubt
 
 *950
 
 should be resolved in favor of the 12petition.
 
 Kuebler v. Martin,
 
 578 So.2d 113, 114 (La.1991);
 
 Chana, supra.
 
 [Emphasis added.]
 

 Moreover, evidence admitted without objection may be viewed as an enlargement of the pleadings and considered as such.
 
 Sterling v. Jones,
 
 255 La. 842, 238 So.2d 537 (1970);
 
 Roy O. Martin Lumber Co. v. Saint Denis Securities Co.,
 
 225 La. 51, 72 So.2d 257 (1954);
 
 Rheuark v. Terminal Mud & Chemical Co.,
 
 213 La. 732, 35 So.2d 592 (1948). The parties to this appeal have offered several contracts in evidence in the trial court and ask this Court to consider them. As they were offered to the trial court and to this Court, not only without objection, but with the active approval of all parties to this appeal, this Court, pursuant to the above cited authorities, will consider them in the opinion that follows. Additionally, in evaluating an exception of no cause of action, allegations which are nothing more than conclusions are disregarded.
 
 Hayes v. The Parish of Orleans,
 
 98-2388, p. 3 (La.App. 4 Cir. 6/16/99), 737 So.2d 959, 961.
 

 Touro is suing under the Preferred Provider Organizations Statute, La. R.S. 40:2201, et seq., for the difference between what the standard rate it would charge a patient and the discounted rate it would charge to a patient seeking a discount through the MultiPlan, Inc. PPO (Preferred Provider Organization), plus the penalties provided by La. R.S. 40:2203.1 G. This Court is aware of no relevant jurisprudence
 
 [2]
 
 . We shall rely instead upon our reading of the plain language of the law in the context of this record.
 

 Fiserv alleges that it is a third party claims administrator (“TPA”) for a self-funded ERISA health plan, which self-funded health plan is not a party to this action. Fiserv further alleges that it has no direct contractual relationship to Touro Land that its only contract is with Multi-Plan granting it access to the MultiPlan PPO. The name “Touro” appears nowhere in Fiserv’s contract with MultiPlan.
 

 Pacific Life alleges that, like Fiserv, its only contract is with MultiPlan and Tou-ro’s name appears nowhere in its contract with MultiPlan.
 

 Because of the many allegations and statutory provisions that we are required to consider in detail, in the interest of clarity we will state our conclusions first:
 

 1. La. R.S. 40:2202(6) defines “[provider” as an entity, such as the plaintiff Touro, which offers health care services. As a matter of law, MultiPlan, Fiserv and Pacific Life do not fit this definition and are, therefore, not “providers.”
 

 2. La. R.S. 40:2202(5)(a) defines a “Preferred Provider Organization (P.P.O.)” as a contractual agreement between a “provider”, in this case Touro, and a “group purchaser”, to provide “alternative” (discounted) rates of payment.
 

 3. La. R.S. 40:2202(3) defines a “[g]roup purchaser” as an entity which contracts with “providers.”
 

 4. Touro alleges that, through its agent Choice Healthcare, it entered into a contractual relationship with MultiPlan, Inc., a PPO, to provide discount medical services to MultiPlan members. A copy of this contract is in the record. Neither Fiserv nor Pacific Life signed this contract and their names appear nowhere therein. As the only contract
 
 *951
 
 offered by the parties with the “provider,” Touro, is the contract between Tou-ro and MultiPlan, then the only entity referred to in this litigation that could possibly meet the definition of “group 14pur chaser,” as defined by La. 40:2202(3), is MultiPlan. Neither Fiserv nor Pacific Life is a “group purchaser” because neither contracted with a “provider.” The contracts which they executed are in the record and were with MultiPlan, not Touro, and MultiPlan is not a “provider”. It is uncontested that they are not signatory to any contract to which Touro, which is a “provider,” is a party.
 

 5. The La. R.S. 40:2203.1 G penalties sought by Touro are only enforceable against a “group purchaser.” Neither Fiserv nor Pacific Life is a “group purchaser.” Therefore, Touro has no cause of action against either Fiserv or Pacific Life for La. R.S. 2203.1 G penalties.
 

 6. La. R.S. 40:2203.1 states that the “alternative” or discounted rates are not enforceable against the “provider”, in this case Touro, unless the PPO is clearly identified on the benefit card presented by the patient. Touro alleges that the benefit cards presented by Fiserv and Pacific Life clients did not properly identify the PPO. We must accept this allegation as true for purposes of the exception of no cause of action. Therefore, we conclude that Touro has stated a cause of action for the difference between the “alternative” rate of payment and the full standard rate for which Fiserv and Pacific Life were billed.
 

 Touro’s claim against Fiserv arises out of medical services rendered on or about May 20, 2004, to a single patient enrolled in the Plan for which Fiserv served as TPA. Touro billed Fiserv $10,561.06 for these services. Fiserv remitted the Multi-Plan discounted rate of $7,392.74. More than two years later, on December 6, 2006, Touro sent Fiserv a demand letter for $3,168.32, the amount of the discount to which Touro alleges the Fiserv patient was not entitled because the [ fipatient’s benefit card allegedly failed to clearly identify the MultiPlan PPO as required by La. R.S. 40:2203.1. Additionally, Touro demanded statutory penalties of $46,300.00.
 

 The following statutory provisions are relevant to this litigation:
 

 La. R.S. 40:2203.1 provides in pertinent part that:
 

 B. A preferred provider organization’s alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser’s contractual agreement or agreements and presented to the participating provider when medical care is provided.
 

 ⅜ ⅜ ⅜ ⅜
 

 D. In no instance shall any provider be bound by the terms of a preferred provider organization agreement that is in violation of this Part.
 

 ⅜ ⅜ ⅜ ⅜
 

 G. Failure to comply with the provisions of Subsection A, B, C, D, or F of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court. A provider may institute this action in any court of competent jurisdiction.
 

 
 *952
 
 La. R.S. 40:2202 provides in pertinent part that:
 

 (3) “Group purchaser” shall mean an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization. “Group purchaser” may include:
 

 (а) Entities which contract for the benefit of their insured, employees, or members such as insurers, self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs.
 

 |fi(b) Entities which serve as brokers for the formation of such contracts, including health care financiers, third party administrators, providers or other intermediaries.
 

 (5)(a) “Preferred Provider Organization (P.P.O.)” shall mean a contractual agreement or agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment specified in advance for a defined period of time in which.
 

 (i) the provider agrees to accept these alternative rates of payment offered by group purchasers to their members whenever a member chooses to use its services....
 

 * * * *
 

 (б) “Provider” shall mean one or more entities which offer health care services and shall include but not be limited to hospitals, individuals, or groups of physicians, individuals or groups of psychologists, nurse midwives, ambulance service companies, and other health care entities.
 

 It is now appropriate to review the relevant allegations in Touro’s petitions to determine whether they are sufficient to state a cause of action against either Fi-serv or Pacific Life.
 

 Touro’s Supplemental and Amending Petition for Damages contains the following allegations relative to its claim against Fiserv:
 

 31.
 

 Defendant Benefit Planners Limited, LLP, n/k/a Fiserv Health Plan Administrators, Inc., entered into a contractual relationship with Multiplan, Inc., a New York-based preferred provider organization, whereby Defendant Benefit Planners Limited, LLP, obtained the right to pay negotiated contract rates for services provided to their insureds by providers enrolled in the Multiplan, Inc., network of providers ....
 

 _|j32.
 

 The contact entered into by Benefit Planners Limited, LLP, and Multi-plan, Inc., provides as follows:
 

 WHEREAS, MPI [MultiPlan] has created and maintains a network of health care providers (“MPI Providers”), by entering into agreements with health care facilities and ancillary health care providers (“MPI” Facilities”), and individual healthcare practitioners (“MPI” Practitioners”), to provide health care services to individuals (“Participants”) covered by health services benefits programs (“Benefit Program”), insured or administered by MPI’s Clients;
 

 WHEREAS, [Fiserv] either provides a Benefit Program for its Participants, or provides certain administrative services to its customers who provide Benefit Programs for their Participants; and
 

 WHEREAS, on behalf of [Fiserv’s] Participants or customers, [Fiserv]
 
 *953
 
 seeks access to MPI’s Facility and Practitioner Networks;
 

 THEREFORE, in consideration of the foregoing and of the mutual covenants herein, intending to be legally bound hereby, the parties agree as follows: [... ]
 

 33.
 

 The contract entered into between Defendant [Fiserv] and Multiplan, Inc., establishes a mandatory relationship between Defendant and Multi-plan, Inc., pursuant to La. Civ.Code Art. 2989, and consequently confers upon Multiplan, Inc., the mandatory authority to enter into a contractual relationship on behalf of Defendant with Petitioner.
 

 34.
 

 [Touro] entered into a contractual relationship with Multiplan, Inc., whereby Petitioner agreed to charge discounted rates for medical services provided to the insureds of Defendant Benefit Planners Limited, LLP....
 

 35.
 

 |sThe contract entered into by Petitioner and Multiplan, Inc., provides as follows:
 

 WHEREAS, on behalf of various organizations, including self-insured employers, union welfare funds, third party administrators, and other similar entities (Clients), who issue or administer health benefits services coverage pursuant to a benefit plan, automobile liability insurance, workers’ compensation program or other plan (Benefit Programs) for covered individuals (Participants), MPI has established networks of preferred health care providers who have agreed to render health care services to Participants in exchange for reimbursement at negotiated rates; and
 

 WHEREAS, PHO is authorized to represent its member facilities, as well as its member physicians and/or other professional providers of health care services (Practitioners), (collectively, Providers), for the purposes of entering this Agreement on their behalf; and [...]
 

 THEREFORE, in consideration of the foregoing and of the mutual promises herein, and intending to be legally bound hereby, the parties agree as follows:
 

 36.
 

 The separate contracts entered into between [Fiserv] and Multiplan, Inc. and [Touro] and Multiplan, Inc., create rights and obligations inuring to the benefit of [Fiserv] and [Touro] and, therefore, create a valid and binding contractual relationship between [Fiserv] and [Touro].
 

 37.
 

 The insureds of [Fiserv], presented to Touro Infirmary for the purposes of obtaining medical treatment, which was provided to those insureds at Touro Infirmary.
 

 38.
 

 [Touro] billed [Fiserv] for the fan-market value of the services provided to [Fiserv’s] insureds due to the fact the insurance cards presented by [Fi-serv’s] upon presentation to Touro Infirmary did not include the Multiplan, Inc, logo in violation of La. R.S. 40:2203.1
 

 
 *954
 
 39.
 

 | aPursuant to the contractual relationship between [Fiserv] and [Touro], [Fiserv] paid [Touro] for the services provided to its insureds at the Multi-Plan, Inc. negotiated contract rate and is, therefore, liable for damages to Petitioner as set forth in La. R.S. 40:2203.1.
 

 In paragraphs 22-30 of the same Supplemental and Amending Petition for Damages, Touro makes identical allegations against the other defendant-appellee herein, Pacific Life. Touro’s claim against Pacific Life, in the amount of $31,906.37, like its claim against Fiserv, arises out of a billing to a single patient.
 

 While Touro alleges in the foregoing paragraphs of its petition that it entered into a contract with MultiPlan, in its brief Touro refers to the contract entered into “between MultiPlan, Inc., and Choice Healthcare, PHO, as agent of Touro Infirmary.” Touro is admittedly not a signatory of this contract, nor is Choice Healthcare identified as Touro’s agent in the contract. There is, however, a clause in the contract indicating that Choice Healthcare “is authorized to represent its member facilities, as well as its member physicians and/or other professional provider of health services ...” We note that none of the parties that Choice Healthcare purportedly represents are identified in the contract as submitted to this Court, other than an oblique reference to Touro in what appears to be a general schedule for services and fees which contains a reference to fees for “Touro at Home” and the “Tou-ro Rehabilitation Center Post Acute Brain Injury Program.” Moreover, for reasons known only to Touro, neither MultiPlan nor Choice Healthcare are parties to either this litigation or this appeal.
 

 The following allegations found in paragraphs “4” and “5” of Touro’s original petition, which allegations are reaffirmed in its Supplemental and Amending Petition, are also relevant:
 

 _[#•
 

 Multiplan, Inc. (hereinafter “Multi-plan”), is a Preferred Provider Organization, as defined by R.S. 40:2202(5), and is subject to the provisions of R.S. 40:2203.1, who, upon information and belief, contracted with several health insurance companies and health plans, i.e., “The Companies”, to negotiate preferred, or “alternate rates”, with health care providers for health care services provided by said providers.
 

 5.
 

 Touro Infirmary and Multiplan executed an Agreement, effective March 1, 2001, whereby Touro agreed to charge “alternate rates” for providing health care services to Multiplan’s network of Companies for all services provided to The Companies’ enrolled members (hereinafter “enrollees”) ...
 

 Touro references the contract between Multiplan and the “Companies” in its petition, brief on appeal and elsewhere in the record, as do the appellees. The appel-lees, Fiserv and Pacific Life, are among those parties referred to in paragraphs “4” and “5” quoted above as “The Companies.” As is clear from these allegations and from Touro’s brief on appeal, the agreement between Touro as the “provider” and Mul-tiPlan is the “Preferred Provider Organization” which, as a matter of law, makes MultiPlan the “group purchaser” as those the terms “provider”, “Preferred Provider Organization,” and “group purchaser” are defined by La. R.S. 40:2202(6), La. R.S. 40:2202(5)(a) and La. R.S. 40:2202(3), respectively, and as used in La. R.S. 40:2203.1.
 

 
 *955
 
 In addition to the allegations quoted above from Touro’s petition, Touro re-urges in its brief the following arguments consistent with the statements made by this Court in the preceding paragraph:
 

 Multiplan, Inc .... is a Preferred Provider Organization, as defined by R.S. 40:2202(5), and is subject to the provisions of R.S. 40:2203.1, who ... contracted ... to [^negotiate preferred, or “alternate rates”, with health care providers [such as Touro] for health care services ...
 

 Touro Infirmary and Multiplan executed an Agreement, effective March 1, 2001, whereby Touro agreed to charge “alternate rates” for providing health care services to Multiplan’s network of Companies for all services provided to the Companies’ enrolled members....
 

 Neither Fiserv nor Pacific Life contracted with Touro “for the purpose of establishing a preferred provider organization” as contemplated by La. R.S. 40:2202(3). Instead, they contracted with MultiPlan as the “group purchaser” from “providers” such as Touro for the purpose of accessing the MultiPlan PPO. Touro refers in several places in its brief to “Appellant’s and Ap-pellees’ separate agreements with a third party preferred provider organization.” It is undisputed that Touro is the “provider” as defined by La. R.S. 40:2202(6). There is no other “provider” involved in this litigation. The only contract involving a “provider” is the contract between Touro as the “provider” and MultiPlan. If there is an La. R.S. 40:2202(5)(a) “Preferred Provider Organization”, and all parties agree that there is, then it must be the agreement between Touro (and then only if we assume that Choice Healthcare entered into the contract as Touro’s agent) and MultiPlan. This is the only conclusion consistent with the law and Touro’s many allegations and arguments referring to the MultiPlan Preferred Provider Organization. Under La. R.S. 40:2202(3) the party who contracts with the “provider” is the “group purchaser”, in this case MultiPlan. As a matter of law, the penalty provisions of La. R.S. 40:2203.1 G, if applicable, are “payable to the provider”, Touro, but may only be enforced against the “group purchaser,” in this case MultiPlan. In other words, as a matter of law, Touro has no cause of action against either Fiserv or Pacific Life for La. R.S. 40:2203.1 G penalties as they are not “group purchasers.”
 

 h¿Touro argues that the contracts which MultiPlan entered into with Fiserv and Pacific Life confer a mandate on MultiPlan such that it creates a direct contractual relationship between Touro and Fiserv and Touro and Pacific Life. But this is simply a legal conclusion, not an allegation of fact that this Court must accept as true in reviewing the exceptions of no cause of action.
 
 Hayes, supra.
 
 This allegation is contradicted by the Preferred Provider Organizations law, La. R.S. 40:2201, et seq., in the context of the contracts and allegations submitted by Touro.
 

 However, without expressing any opinion as to the merits of such a claim, we find that Touro has stated a cause of action against Fiserv and Pacific Life for the difference between the discounted “alternative rates of payment” and the full standard rate of payment as billed by Touro. La. R.S. 40:2203.1 B states that the “alternative rates of payment shall not be enforceable or binding upon any provider [Touro] unless [the preferred provider] organization is clearly identified on the benefit card ...” Touro’s pleadings state that the PPO was not properly identified on the card. As noted earlier in this opinion, we must accept this allegation of fact as true at this stage of the proceedings. This is sufficient to state a cause of action to claim Touro’s full standard rate of payment which it billed. La. R.S. 40:2203.1 G designates specifically who may be liable for
 
 *956
 
 penalties and names only the “group purchaser.” But La. R.S. 40:2203.1 B states in sweeping and universal terms that the “alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser.... ” We read this language to mean that no one has the right to enforce the “alternate” rate of payment against Touro where the benefit card does not meet the requirements of La. R.S. 40:2203.1 B. Under this broad language, Touro has stated sufficient allegations, when viewed under the standards 11sfor an exception of no cause of action, to entitle it to a day in court to assert its claims for the difference between its full standard rate and the discounted “alternative rate” allegedly tendered to it by Fiserv and Pacific Life. While both Fiserv and Pacific Life have made convincing arguments as to why they should not be subjected to La. R.S. 40:2203.1 G penalties, at this stage of the proceedings, they have not yet made a convincing case justifying why they should be permitted to enforce discounted rates against Touro in the face of Touro’s factual allegations concerning the benefit cards.
 

 For the foregoing reasons, we amend the judgment of the trial court in part to vacate and remand only that portion of the judgment dismissing Touro’s claims against Fiserv and Pacific Life for the difference between its full standard rate and the discounted “alternative rate,” in order to allow Touro to pursue those claims in the trial court. In all other respects, the judgment of the trial court is affirmed. All parties to bear their own costs.
 

 AMENDED. AFFIRMED AS AMENDED, AND REMANDED.
 

 [1]
 

 . Touro's claims against the appellees were initially dismissed with leave to amend on previous exceptions of no cause of action by judgment of September 24, 2008. This appeal arises out of the amendments made by Touro in response to the previous dismissal.
 

 [2]
 

 . We decline to refer to the two unreported federal district court cases cited by the appel-lees.