# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 20-106

GEORGE RAYMOND WILLIAMS, M.D., ORTHOPAEDIC SURGERY,
A PROFESSIONAL MEDICAL LLC, ET AL.

VERSUS

BESTCOMP, INC., ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-5242-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**********

# JONATHAN W. PERRY
# JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Jonathan W. Perry,
Judges.

**AFFIRMED.**

Patrick J. McShane
Carl E. Hellmers, III
D. Burke Stough
Frilot L.L.C.
100 Poydras Street, Suite 3700
New Orleans, Louisiana  70163
(504) 599-8000
COUNSEL FOR DEFENDANT/APPELLANT:
     Landmark American Insurance Company

George D. Fagan
Leake & Andersson LLP
1100 Poydras Street, Suite 1700
New Orleans, Louisiana  70163
(504) 585-7500
COUNSEL FOR DEFENDANT/APPELLANT:
     Chartis Specialty Insurance Company

Thomas A. Filo
Somer G. Brown
Cox, Cox, Filo, Camel & Wilson, LLC
723 Broad Street
Lake Charles, Louisiana  70601
(337) 436-6611
COUNSEL FOR PLAINTIFFS/APPELLEES:
     George R. Williams, M.D., Orthopaedic Surgery,
     A Professional Medical L.L.C., et al.

Patrick C. Morrow
James P. Ryan
Morrow, Morrow, Ryan, Bassett & Haik
324 West Landry Street
Opelousas, Louisiana  70570
(337) 948-4483
COUNSEL FOR PLAINTIFFS/APPELLEES:
     George R. Williams, M.D., Orthopaedic Surgery,
     A Professional Medical L.L.C., et al.

Stephen B. Murray
Stephen B. Murray, Jr.
Arthur M. Murray
Murray Law Firm
909 Poydras Street, Suite 2150
New Orleans, Louisiana  70112-4000
(504) 525-8100
COUNSEL FOR PLAINTIFFS/APPELLEES:
     George R. Williams, M.D., Orthopaedic Surgery,
     A Professional Medical L.L.C., et al.

**John S. Bradford**
**William B. Monk**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**One Lakeside Plaza, Fourth Floor**
**Lake Charles, Louisiana  70601**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
> **George R. Williams, M.D., Orthopaedic Surgery,**
> **A Professional Medical L.L.C., et al.**

**PERRY, Judge.**

This matter arises from alleged violations of the Louisiana Preferred Provider Organization Act ("PPO Act"), La.R.S. 40:2201–2210. Defendant excess insurers Chartis Specialty Insurance Company ("Chartis") and Landmark American Insurance Company ("Landmark") (collectively "Appellants") suspensively appeal several adverse rulings which resulted in judgment in the amount of $5 million against each, together with legal interest and court costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Louisiana health care providers ("Plaintiffs") filed a petition for damages and class certification on September 30, 2009, alleging their workers' compensation medical bills were discounted pursuant to PPO agreements without the benefit of notice as required by La.R.S. 40:2203.1. Plaintiffs' suit was initially filed solely against Bestcomp, Inc. ("Bestcomp"), based on allegations that as a group purchaser under La.R.S. 40:2202(3), Bestcomp failed to comply with the mandatory notice provisions contained in Subsection B of La.R.S. 40:2203.1 and, thus, was liable for damages under Subsection G thereof.[1]

Plaintiffs filed an amended petition on January 11, 2011, naming Advantage Health Plans, Inc., CCMSI Holdings, Inc.,[2] and Stratacare, Inc. ("Stratacare"), as additional group purchasers liable for damages for failing to follow the mandatory notice provisions. Plaintiffs alleged Stratacare entered into PPO agreements for

---

[1] Subsection B of 40:2203.1 contains the actual notice requirements group purchasers must follow. The punitive provisions of Subsection G of 40:2203.1 state that failure to follow the notice requirements "shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court."

[2] Advantage Health Plans, Inc. and CCMSI Holdings, Inc. were alter egos of Bestcomp.

alternative rates of pay ("PPO discounts") on its own behalf and on behalf of its clients.

Plaintiffs' fifth amended petition named Cannon Cochran Management Services, Inc. ("Cochran") as another alleged group purchaser subject to damages under La.R.S. 40:2203.1(G). In its answer, Cochran filed a third-party demand against Rehab Review, Inc. ("Rehab Review"). According to Cochran, Rehab Review "performed bill review services of health care providers who have rendered medical services to workers' compensation patients in Louisiana" and "applied PPO discounts to the bills of [Plaintiffs] ostensibly pursuant to the providers' respective contracts with Bestcomp." Cochran further alleged "the activities of Rehab Review respecting the Bestcomp contracts and plaintiffs' bills, are the same as or substantially similar to the activities of defendant Stratacare" and so "to the extent Stratacare is deemed to be a 'Group Purchaser' . . . then Rehab Review is also a 'Group Purchaser' subject to statutory penalties for the discounts applied by it to providers' bills without prior notice." Cochran contended Rehab Review was liable for damages applicable to any discount applied in violation of La.R.S. 40:2203.1.

Relevant to this appeal, on October 1, 2013, Plaintiffs' sixth amended petition added Stratacare's insurers—Chartis, Landmark, Darwin Select Insurance Company ("Darwin"), Illinois Union Insurance Company ("Illinois Union"), and Westchester Surplus Lines ("Westchester")—as defendants pursuant to the direct-action statute, La.R.S. 22:1269. Presently, only Chartis and Landmark remain defendants.

Several pre-trial dispositive motions were filed prior to class certification in the instant matter.[3] In motions for summary judgment, Appellants argued Stratacare

_____

[3] Darwin, Illinois Union, and Westchester joined in filing most, if not all, of the pre-trial dispositive motions at issue herein. However, only Chartis and Landmark remained as defendants when the trial court rendered its judgment on June 20, 2019. Thus, Darwin, Illinois Union, and Westchester are not involved in this appeal.

2

was not a group purchaser under La.R.S. 40:2202(3) and was not liable for damages under La.R.S. 40:2203.1. Appellants further alleged that certain terms and exclusions within their respective insurance policies barred coverage for Plaintiffs' claims against Stratacare. The trial court deferred consideration of these motions until after its adjudication of the issue of class certification.

By judgment dated March 8, 2017, the trial court certified the following class: "All medical providers who have provided services to workers' compensation patients as contemplated in La.R.S. 23:1201, et seq., and whose bills have been discounted after January 1, 2000, pursuant to a preferred provider organization agreement, as defined in La.R.S. 40:2202, by and through Bestcomp and Stratacare." This court affirmed the class certification. *See Williams v. Bestcomp, Inc.*, 17-478 (La.App. 3 Cir. 1/4/18), 237 So.3d 80.

Following class certification, Plaintiffs filed a motion for summary judgment, contending Stratacare was a group purchaser, failed to comply with the notice requirements of La.R.S. 40:2203.1, and applied PPO discounts to Plaintiffs' medical bills by virtue of its contract with Bestcomp and, in turn, its contract with third-party defendant, Rehab Review. Plaintiffs further asserted that their claims against Stratacare fell within the Insuring Agreements of both Appellants' excess liability insurance policies and that the total amount of Stratacare's liability exceeded the available $5 million coverage provided therein. Plaintiffs submitted the affidavit of Robert A. Ehlers, CPA, in support of their motion. Mr. Ehlers reviewed Stratacare's corporate records and identified a total of 11,126 PPO discounts (from the first date of service only) taken by Rehab Review, Stratacare's client and third-party defendant herein. The number of discounts multiplied by $2,000 equaled $22,252,000.

3

Next, Appellants filed peremptory exceptions of prescription or, alternatively, no right of action. Appellants argued Plaintiffs' claims are delictual in nature and, as such, are prescribed. *See* La.Civ.Code art. 3492. The latter exception challenged Plaintiffs' ability to pursue Appellants, as insurers, in a direct action should Plaintiffs' claims be deemed contractual in nature. *See* La.Civ.Code art. 3499.

At a hearing on the parties' cross-motions for summary judgment and Appellants' exceptions, held on September 28, 2018, the trial court found Stratacare to be a group purchaser liable for damages for failing to follow the mandatory notice provisions of La.R.S. 40:2203.1. Relying upon the affidavit of Mr. Ehlers, the trial court further ruled Plaintiffs proved sufficient violations, with each violation being subject to a damage award of $2,000 pursuant to La.R.S. 40:2203.1(G). The trial court took under advisement the remaining motions for summary judgment and peremptory exceptions filed by Appellants.

In March 2019, Appellants filed additional peremptory exceptions and motions for summary judgment.[4] Essentially, Appellants argued res judicata barred coverage for Plaintiffs' claims against Stratacare under each Appellants' second excess policy, and untimely notice barred coverage under each Appellants' first excess policy.

Roughly a week later, on March 26, 2019, the trial court issued written Reasons for Judgment on the motions and exceptions that were argued on September 28, 2018, denying all relief sought by Appellants. On June 20, 2019, a judgment was signed, denying Appellants' motions for summary judgment and peremptory exceptions, granting Plaintiffs' motions for summary judgment, and granting

---

[4] On March 18, 2019, Chartis filed a Peremptory Exception of Res Judicata and/or Motion for Summary Judgment. On March 19, 2019, Landmark filed an Exception of Res Judicata, Second Motion for Summary Judgment and Supplemental Opposition to Plaintiffs' Motion for Summary Judgment.

4

judgment in the amount of $5 million each against Chartis and Landmark, together with legal interest and all costs of court.

Also on June 20, 2019, the trial court issued a Per Curiam, denying the peremptory exceptions of res judicata and/or motions for summary judgment which Appellants filed in March 2019. The trial court explained, in pertinent part:

> As to the March 2019 Exceptions and/or Motions for Summary Judgment filed by Chartis and Landmark, the court views those motions in the nature of Motions for New Trial based upon arguments of newly discovered evidence that had arisen after the September 28, 2018 arguments. Without a written signed judgment, any motion for a new trial would have been premature.
>
> Wishing to preserve for the defendants for further review in this matter any substantive rights that they may have, the Court denies the March 29, [sic] 2019 Exceptions and/or Summary Judgment motions filed by Chartis and Landmark, reserving the rights to Chartis and Landmark to either file a Motion for New Trial now that a written judgment on the Exceptions and/or Summary Judgment motions argued September 28, 2018 has been filed or directly appeal the newly executed judgment.

Appellants filed motions for new trial, again arguing res judicata barred coverage for Plaintiffs' claims against Stratacare under each Appellants' second excess policy, and untimely notice barred coverage under each Appellants' first excess policy.[5] In its motion, Landmark additionally alleged the trial court's judgment dated June 20, 2019, and related Reasons for Judgment issued on March 26, 2019, "fail[ed] to apply the Landmark April 1, 2010 unambiguous retroactive date applicable to Plaintiffs' claims as set forth in detail in the Landmark original Motion for Summary Judgment[.]"

The trial court denied Appellants' motions for new trial after a hearing on August 30, 2019. Judgment to this effect was signed September 19, 2019.

---

[5] These arguments were first made in exceptions and motions Appellants filed in March 2019.

Appellants filed suspensive appeals of the judgments dated June 20, 2019, and September 19, 2019.

## ASSIGNMENTS OF ERROR

Appellants raise five assignments of error correspondingly. First, they argue the trial court erred in declaring Stratacare is a group purchaser under La.R.S. 40:2202(3). Second, the trial court erred in not applying the pending or prior litigation exclusions in Appellants' policies to deny coverage. Third, the trial court erred in failing to dismiss Plaintiffs' claims under Appellants' exceptions of prescription or, alternatively, no right of action. Fourth, the trial court erred in not applying res judicata to dismiss Plaintiffs' claims under each Appellants' respective second policy. Fifth, the trial court erred in not dismissing Plaintiffs' claims based on untimely notice under each Appellants' respective first policy.

Landmark argues two additional errors. It argues the trial court erred in failing to apply the prior knowledge exclusion and the retroactive date contained in its policies to preclude coverage.

## LAW AND DISCUSSION

### *Motion for Summary Judgment*

Motions for summary judgment were filed to resolve questions surrounding Stratacare's alleged group purchaser status and certain terms and exclusions contained within each Appellants' policies. The trial court granted Plaintiffs' motion relative to Stratacare's group purchaser status and denied Appellants' motions, ruling coverage was afforded for Plaintiffs' claims against Stratacare.

"A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact." *N. Am. Fire & Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 03-300, p. 3 (La.App. 3 Cir. 10/1/03), 856 So.2d 1233, 1235, *writ denied*, 03-3334 (La. 2/13/04), 867 So.2d 694. "The

6

summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id*. Pursuant to La.Code Civ.P. art. 966(A)(3), a court will grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *See also Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

Summary judgments are reviewed on appeal de novo. *Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404. Appellate courts use the same criteria as the trial court and ask the same questions: is there any genuine issue of material fact, and is the movant entitled to judgment as a matter of law. *Id.*

*Group Purchaser*

The threshold issue before us is whether Stratacare is a group purchaser. The definition of group purchaser is set forth in La.R.S. 40:2202(3) as follows:

> "Group purchaser" shall mean an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization. "Group purchaser" may include:
>
> (a) Entities which contract for the benefit of their insured, employees, or members such as insurers, self-insured organizations, Taft-Hartley trusts, or employers who establish or participate in self-funded trusts or programs.
>
> (b) Entities which serve as brokers for the formation of such contracts, including health care financiers, third party administrators, providers, or other intermediaries.

Appellants argue La.R.S. 40:2202(3), strictly mandates that group purchasers have a "contract[] with providers[.]" They contend Bestcomp is the group purchaser in this case, while Stratacare is a technology company who simply licensed its proprietary billing review software, known as Strataware, and provided billing review services. Appellants assert Stratacare contracted with Bestcomp in 2003,

agreeing to access Bestcomp's PPO for the limited purpose of providing billing review services to its clients. According to Appellants, Stratacare's licensees used Strataware to calculate a recommended discount, but Stratacare's licensees determined whether to pay the provider. For instance, Rehab Review used Strataware to generate recommended payments for the nearly 45,000 discounted claims at issue in this case. Appellants contend that as a third-party billing review software licensor, Stratacare had no ability and no duty, and did not issue, control, or deliver benefit cards to anyone who sought medical care from any health care providers for any work-related injuries covered by workers' compensation. Thus, Appellants argue that because Stratacare undisputedly did not contract with medical providers, it is not a group purchaser and was neither bound to fulfill the notice requirements nor subject to damages under La.R.S. 40:2203.1(G).

Appellants refer to the fourth circuit decision in *Touro Infirmary v. Am. Mar. Officer*, 09-697 (La.App. 4 Cir. 11/9/09), 24 So.3d 948, to buoy its contention La.R.S. 40:2202(3) requires an entity to contract directly with medical providers to be a group purchaser. In *Touro*, 24 So.3d 948, the health care provider sued third-party administrators for the difference between the full standard rate of payment and the discounted alternative rates of payment through the MultiPlan, Inc. PPO, plus the damages provided by La.R.S. 40:2203.1(G). Neither of the third-party administrators, however, had entered into any contract with the health care provider. The third-party administrators successfully asserted, at the trial court level, a peremptory exception of no cause of action and the provider's claims were dismissed with prejudice. In upholding part of the trial court's judgment, dismissing the provider's claims for damages under La.R.S. 40:2203.1(G), the fourth circuit declared, "Under La.R.S. 40:2202(3) the party who contracts with the 'provider' is

8

the 'group purchaser[.]'" *Id.* at 955. However, the judgment was vacated, in part, and the case was remanded on other grounds.[6]

Appellants also point to *Wightman v. Ameritas Life Ins. Corp.*, 19-11628 (11/26/19), 426 F. Supp.3d 258, which followed *Touro*, 24 So.3d 948. The *Wightman* court found plaintiffs failed to state a claim under La.R.S. 40:2203.1(G) based upon its interpretation that *Touro* "analyzed the term 'provider' as contemplated in both La.R.S. 40:2202(3) and La.R.S. 40:2203.1(G) and determined it refers to the 'provider involved in this litigation.' In other words, there must be privity of contract between the provider seeking Subsection G damages and the entity against whom they are seeking Subsection G damages." *Wightman*, 426 F. Supp.3d at 268.[7]

Plaintiffs contend Appellants' analysis results in La.R.S. 40:2203.1 meaning there can be only one, not multiple, group purchasers. They assert contracting directly with medical providers is not the sole means by which an entity qualifies as a group purchaser.

Plaintiffs argue Stratacare is a group purchaser because it acted as an intermediary by contracting for discounted alternative rates of payment from providers through Bestcomp and then made those PPO discounts available to its clients, such as Rehab Review. Plaintiffs assert this is the reason the definition of group purchaser includes those entities who contract indirectly with medical providers to secure and pass along PPO discounts, i.e., intermediaries. *See* La.R.S. 40:2202(3)(b).

---

[6] The *Touro* court held the provider "ha[d] stated a cause of action against [the third-party administrators] for the difference between the discounted 'alternative rates of payment' and the full standard rate of payment as billed by [the provider]." *Id.*, 24 So.3d at 955.

[7] *Wightman*, 426 F.Supp.3d 258, is purely persuasive to the situation before this court. *See Perro v. Alvardo*, 20-339 (La.App. 3 Cir. 9/30/20), 304 So.3d 997.

Plaintiffs further highlight La.R.S. 40:2203.1(A), which states "the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this part[.]" Next, Plaintiffs point to the definitions of "preferred provider organization" and "group purchaser" in La.R.S. 40:2202, asserting that examination of these definitions is necessary to understanding the applicability of La.R.S. 40:2203.1.

Under La.R.S. 40:2202(5)(a), a PPO is defined as: "a contractual agreement *or agreements* between a provider or providers and a group purchaser *or purchasers* to provide for alternative rates of pay specified in advance . . . ." (Emphasis added). According to Plaintiffs, a PPO is nothing more than a contractual agreement or series of agreements for PPO discounts between providers—those being discounted for medical services—and group purchasers—those obtaining the discounts. Plaintiffs assert a PPO can consist of one agreement or multiple agreements and, likewise, the PPO can include one group purchaser or multiple group purchasers depending on the number of agreements involved in the formation of the PPO.

We find no merit to Appellants' contention Stratacare is not a group purchaser, as its contract with Bestcomp proves. Stratacare's agreement with Bestcomp shows: (1) it "provides its clients with computer programs that perform the bill review functions including PPO repricing;" (2) it "desires to provide its clients with the benefits of utilizing [Bestcomp's] network of healthcare providers with their discounted fees for services;" and (3) Bestcomp was "willing and able to provide the provider data, including demographics and rates for such services to be incorporated into the bill review software such that the software is able to reprice the services to [Bestcomp's] contracted rates." Stratacare also agreed: "that [Bestcomp] shall be [Stratacare's] non-exclusive supplier of networks of healthcare providers[,]"

10

that it "may continue to offer to clients, in addition to [Bestcomp's] network, other networks of healthcare providers to which [Stratacare] now or hereafter has access[,]" and that it "agrees to present clients with the option of choosing [Bestcomp's] network and Other Networks to provide Covered Services to their members."

These provisions indicate Stratacare was more than simply a passive provider of software. Stratacare also provided its clients with alternative rates of pay obtained through its contract with Bestcomp. Stratacare was an intermediary as envisioned in La.R.S. 40:2202(3)(b).[8] Consequently, Stratacare meets the definition of group purchaser and, thus, is liable for damages for failing to follow the mandatory notice provisions of La.R.S. 40:2203.1.

*Insurance Coverage*

The parties also raised issues concerning insurance coverage via motions for summary judgment. The trial court denied each Appellants' motions, ultimately resulting in a judgment for damages in favor of Plaintiffs.

On appeal, Appellants contend endorsements contained in each of their respective policies bar coverage for Plaintiffs' claims against Stratacare and they further argue the trial court erred in failing to apply unambiguous exclusions of coverage for pending or prior litigation and prior knowledge. The interpretation of an insurance contract and its exclusions is a question of law which can be resolved by a motion for summary judgment. *Vidrine v. LaFleur*, 07-1299 (La.App. 3 Cir. 3/5/08), 979 So.2d 609.

Appellants' excess liability insurance policies were designated "follow form" policies. "The 'follow form' designation means that it follows the conditions and

---

[8] We will not speculate why our colleagues on the fourth circuit held a different view in *Touro*, 24 So.3d 948. Considering the evidence before us, we will not ignore the broader concept of the "group purchaser" definition encompassed in La.R.S. 40:2202(3)(b).

agreements of an underlying policy. Unless there is an express exception to the form of the underlying insurance, the excess carrier in a follow form policy must act according to the underlying insurance policy's terms." *Toston v. Nat'l Union Fire Ins. Co. of La.*, 41,567, p. 5 (La.App. 2 Cir. 11/3/06), 942 So.2d 1204, 1207, *writ denied*, 06-2881 (La. 2/2/07), 948 So.2d 1086 (citations omitted).

In this case, Chartis issued two policies to Stratacare, both entitled "EXCESS EDGE[.]" The first, numbered 01-715-33-88, was effective from April 1, 2010, through September 30, 2010 ("First Chartis Policy"). The second, numbered 01-204-72-24, was effective from September 30, 2010, through September 30, 2011 ("Second Chartis Policy").

Landmark also issued two policies to Stratacare, both entitled "EXCESS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS – FOLLOW FORM[.]" Landmark's first policy, numbered LHZ725644, was effective from April 1, 2010, through September 30, 2010 ("First Landmark Policy"). Landmark's second policy, numbered LHZ727636, was effective from September 30, 2010, through September 30, 2011 ("Second Landmark Policy").

The First Chartis Policy and the First Landmark Policy followed the form and were excess of an underlying policy issued by Darwin to Stratacare, numbered 0304-1262 and effective from September 30, 2009, through September 30, 2010. The Second Chartis Policy and the Second Landmark Policy followed the form and were excess of an underlying policy issued by Illinois Union to Stratacare, numbered EON G24578562 001 and effective from September 30, 2010, through September 30, 2011.

As with any insurance contract, definitions form a significant part of the agreement. The definition of "claim" is not contained in either Appellants' policy;

12

therefore, we look to the underlying policies. The following definition is contained in Darwin's policy:

Claim means:

1.  any written demand for monetary, non-monetary or injunctive relief;

2.  any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment or similar proceeding;

3.  any administrative or regulatory investigation or proceeding;

4.  any arbitration proceeding;

5.  any prosecution or governmental action related to Privacy Wrongful Acts; or

6.  any written request to toll or waive a statute of limitations.

The following definition is contained in Illinois Union's policy:

**Claim** means:

1.  with respect to Insuring Agreements A, B, C, D, and G:

    a.  a written demand against any **Insured** for monetary or non-monetary damages;

    b.  a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading; or

    c.  an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

2.  also, with respect to Insuring Agreements C and D only, a **Regulatory Proceeding**;

3.  with respect to Insuring Agreement E, a written report by the **Insured** to the **Insurer** of a failure by the **Insured** or by an independent contractor for which the **Insured** is legally responsible to properly handle, manage, store, destroy or otherwise control **Personal Information**;

4.  with respect to Insuring Agreement F, a **Network Extortion Threat**;

including any appeal therefrom.

For the remaining provisions pertinent to our review, we look to Appellants' policies.

> The declaration sheet of the Chartis policy provides:

> **NOTICES**: *Depending on the terms, conditions and limitations of the* ***Followed Policy***, *this policy may (1) only provide coverage for loss from claims first made or first made and reported during its* ***Policy Period***; *(2) have its limit of liability reduced by the payment of defense costs and/or claim expenses, and (3) not impose a duty to defend on the* ***Insurer***. *Please read the* ***Followed Policy*** *and this policy carefully and discuss the coverage provided thereunder and hereunder with your insurance agent or broker*.

The "INSURING AGREEMENT" contained in the policies Chartis issued to Stratacare declares:

> This policy shall provide coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, as modified by and subject to the terms, conditions and limitations of this policy.

> The **Insurer's** coverage obligations under this policy attach to the **Insurer** only after the **Total Underlying Limits** have been exhausted through payments by, on behalf of or in the place of the **Underlying Insurers** of amounts covered under the **Underlying Policies**. This policy shall continue in force as primary insurance only upon the exhaustion of the **Total Underlying Limits** by reason of such payments and satisfaction of any applicable retention. This policy shall recognize erosion of an **Underlying Limit** of an **Underlying Policy** through payments by others of covered amounts under that **Underlying Policy**. The risk of uncollectability of any part of the **Total Underlying Limits**, for any reason, is expressly retained by the **Policyholder** and any insureds, and is not insured under this policy or assumed by the **Insurer**.

In addition, "ENDORSEMENT #4" amends the "INSURING AGREEMENT" of only the Second Chartis Policy as follows:

> Notwithstanding the foregoing, the policy shall continue in force as primary insurance upon exhaustion of the sub-limits in the **Followed Policy** for any amounts described in (ii) through (iii) of the Declarations, but solely with respect to such amounts that are otherwise covered and solely up to the amount of this policy's sub-limit for such amounts as set forth in (ii) through (iii). The **Insurer** shall not be responsible for any other Loss until the exhaustion of the **Total Underlying Limits**.

In the two policies Landmark issued to Stratacare, the scope of the coverage afforded

is set forth as follows:

### I. Insuring Agreement

The Company as shown in the Declarations, in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Company shall provide the Insured with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as shown in the Declarations and shall pay **Damages** and associated **Claim Expenses** arising from a **Claim** first made during the **Policy Period** for a negligent act, error, or omission taking place after the **Retroactive Date** as shown in the Declarations.

In addition, "II. Definitions" states:

E. **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy.

Before understanding Appellants' arguments as they relate to relevant policy

language, it is necessary to also survey proceedings which Appellants allege are

significant herein. For this, we reproduce a timeline penned by the trial court in its

Reasons for Judgment:

On September 13, [sic] 2009, [Hammerman] and Gainer, Inc. (hereinafter referred to as "H & G") filed suit against Stratacare, Inc. for indemnification involving discounted payments to healthcare providers pursuant to Title 23 of the Louisiana Revised Statues [sic] (workmen's comp claims). The H & G action sought damages from Stratacare's alleged failure to review bills properly and to apply Louisiana law as to how much should be paid for the services as required under Title 23. Subsequently, on February 3, 2010, H & G amended its original complaint in this suit to also add a claim for indemnity from Stratacare arising out of litigation (hereinafter referred to as referred to as [sic] the "*Mor-Tem* action"), described below.

The next filing of consequence were two suits filed on September [30], 2009 by George Raymond Williams, MD, Orthopaedic Surgery, a Professional Medical LLC (hereinafter "Williams"). On that date, plaintiff filed two class actions. The first was filed against Mor-Tem,

15

H & G and Integra alleging PPO discounts were taken in workmen compensation cases without giving prior notice in violation of both Title 23 and Title 40. Stratacare was added to this suit by a Third Party Demand filed on May 5, 2010 by H & G and Mor-Tem seeking defense and indemnity from the claims brought alleging that the medical bills reviewed by Stratacare were improperly discounted under Title 40.

Also, on September 30, 2009, Williams filed suit against BestComp, et al, on behalf of medical providers who claimed that as a member of a PPO, they failed to receive statutory notice of discounts to their billings as provided for in Louisiana R.S. 40:2203, *et seq*. Stratacare was added as a defendant in this litigation by Williams on January 11, 2011.

Appellants contend the trial court erred in ruling the exclusionary language contained within their respective policies did not preclude coverage for Plaintiffs' claims against Stratacare in this matter. Appellants, as the insurers, have the burden of proving a loss falls within a policy exclusion. *Estate of Munsterman v. Unitrin Auto & Home Ins. Co.*, 20-209 (La.App. 3 Cir. 11/18/20), 307 So.3d 297.

Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed. *Calogero v. Safeway Ins. Co. of La.*, 99-1625 (La. 1/19/00), 753 So.2d 170. Nonetheless, "an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 05-081, p. 20 (La.App. 1 Cir. 8/23/06), 943 So.2d 429, 443, *writs denied*, 06-2918 (La. 2/16/07), 949 So.2d 423, 06-2803 (La. 2/16/07), 949 So.2d 424.

*Id.*

*Pending and Prior Litigation Exclusion*

We first address Appellants' shared contention the trial court erred in not denying coverage for Plaintiffs' claims against Stratacare under the pending or prior litigation exclusionary language set forth below. In the two policies Chartis issued to Stratacare, "ENDORSEMENT #1" states:

16

PENDING AND PRIOR LITIGATION
EXCLUSION FOR EXCESS LIMITS

> In consideration of the premium charged, it is understood and agreed that with respect to the Limit of Liability $5,000,000 excess of the first $5,000,000 Limit of Liability stated in the Declarations, the Insurer shall have no liability to make any payment in connection with any pending or prior litigation as of the Pending & Prior Date (as defined below) or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.
>
> For purposes of this endorsement, the Pending & Prior Date means: April 1, 2010.

Both policies issued to Stratacare by Landmark contain the "PRIOR AND PENDING LITIGATION EXCLUSION ENDORSEMENT" in "Endorsement No. 07" which states:

> In consideration of the premium charged, it is agreed that this policy does not apply to any Claim(s) arising from:
>
> 1.  any Claim or litigation against any insured occurring prior to, or pending as of April 1, 2010 including (but not limited to) Claims, demands, causes of action, legal or quasi-legal proceedings, decrees, or judgments;
>
> 2.  any subsequent litigation of Claims arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation;
>
> 3.  any act, error, or omission, Personal Injury or Advertising Liability of any insured(s) which gave rise to such prior or pending litigation or Claims.
>
> All other terms and conditions of this policy remain unchanged.

Appellants assert their respective exclusions preclude coverage for any pending or prior claim or litigation against Stratacare as of April 1, 2010, as well as any claim or litigation after April 1, 2010, arising from or based on similar facts or matters as those alleged in the pleadings of pending or prior litigation. Appellants argue coverage for Plaintiffs' claims against Stratacare is excluded because the instant matter, the H & G action, and the Mor-Tem action were filed prior to and were pending as of April 1, 2010.

Appellants contend it is inconsequential that Stratacare was not named a defendant in the instant matter until January 11, 2011. Rather, they argue Stratacare's alleged liability had only to be in connection with any action pending prior to April 1, 2010. Thus, regarding this case, Appellants assert it is enough that Stratacare's liability originated from the claims Plaintiffs alleged against Bestcomp in their original petition filed on September 30, 2009. We disagree.

It is essentially Appellants' contention that Plaintiffs' lawsuit against Bestcomp, not their insured, should constitute pending or prior litigation for the claims against Stratacare, their insured. We find this interpretation of Appellants' pending or prior litigation exclusions unsustainable.

By the plain language defining "claim" in the underlying policies of Darwin and Illinois Union, a claim did not exist until Stratacare was named a defendant in these proceedings on January 11, 2011. There is no evidence indicating Stratacare received a written demand for damages, or anything of the sort, prior thereto. Thus, we do not consider the instant matter to be pending or prior litigation which would exclude from coverage Plaintiffs' claims against Stratacare.

Appellants further contend that the claims filed in this case arose from or were based on similar facts or matters to those alleged in the H & G action and the Mor-Tem action. Yet again, we disagree.

The H & G action involved a Petition for Declaratory Judgment. H & G, a third-party administrator of workers' compensation claims, sought indemnity for Stratacare's alleged failure to recommend the proper reimbursement amounts in accordance with the Fee Schedule under Title 23 of Louisiana's Workers' Compensation Act. *See* La.R.S. 23:1034.2. In addition, H & G amended its original complaint on February 3, 2010, adding a claim for indemnity from Stratacare arising out of the lawsuit filed by Plaintiffs in the Mor-Tem action.

Though the H & G action existed prior to April 1, 2010, the claims against Stratacare in the H & G action are different from the claims at issue in the instant matter. The H & G action followed Stratacare's alleged violations of the workers' compensation fee reimbursement schedule. The instant matter stems from Stratacare's alleged violations of the PPO notice requirements and involved PPO discounts taken through Bestcomp.

Contrary to Appellants' assertions, we do not find the proceedings in the instant matter and those proceedings in the H & G action to be substantially the same or derived from essentially the same facts. The H & G action affected Stratacare's alleged liability for violations of the workers' compensation fee schedule in Title 23, not its alleged obligation as a group purchaser for violating PPO notice requirements in Title 40. Thus, we do not interpret Appellants' pending or prior exclusions to exclude coverage for Plaintiffs' claims against Stratacare owing to the H & G action.

The Mor-Tem action is also a class action lawsuit filed by Plaintiffs in this matter and alleged Title 40 claims. The Mor-Tem action was not pending against Stratacare on April 1, 2010, and Stratacare was not a defendant in the Mor-Tem action until May 5, 2010, when it was sued for defense and indemnity by the third-party demands of H & G and Mor-Tem. Furthermore, PPO discounts taken through Bestcomp were not at issue in the Mor-Tem action as they are herein. For the same reasons we found that the instant matter was not pending or prior litigation, we find neither is the Mor-Tem action.

Stratacare's purported liability was not yet known to Plaintiffs when either lawsuit against Bestcomp or Mor-Tem was filed. Both filed on September 30, 2009, neither lawsuit named Stratacare as a defendant. Until Stratacare was brought into the Mor-Tem action by a third-party demand on May 5, 2010, a claim against Stratacare did not exist. This claim was clearly made after the pending and prior

19

date set forth in Appellants' respective policies. Thus, the Mor-Tem action is not pending or prior litigation entitling Appellants to exclude coverage for Plaintiffs' claims against Stratacare. Accordingly, having found Appellants' contentions relating to pending or prior litigation meritless, coverage for Plaintiffs' claims against Stratacare is not barred by Appellants' pending or prior litigation exclusions.

*Prior Knowledge Exclusion*

Next, we address Landmark's contention the trial court erred in not finding Stratacare knew its acts or omissions were likely to give rise to a claim prior to the effective date of Landmark's policy.[9] The policies issued by Landmark to Stratacare contained the "PRIOR KNOWLEDGE EXCLUSION" in "Endorsement No. 08" which states:

> In consideration of the premium charged, it is agreed that the following Exclusion is added to the policy:
>
>> Any alleged act, error, omission, or circumstance likely to give rise to a Claim that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to any prior Claim or possible Claim referenced in the insured's application.

All other terms and conditions of this policy remain unchanged.

Landmark's argument is twofold. It first contends the actions associated with its discount activities and potential violations of Title 40 were not only likely to give rise to a claim, Stratacare was fully aware the alleged discounts had already led to two lawsuits. In brief, Landmark submits that "[t]he language of the exclusion precludes coverage on a broad basis for actions or circumstances that may give rise to a claim[.]"

Explaining its rejection of Landmark's aforesaid contention in its Reasons for Judgment, the trial court wrote, in pertinent part:

---

[9] Chartis raised this argument below but has abandoned the contention on appeal.

20

Endorsement 8 denying coverage for an alleged act, error, or omission or circumstance likely to give rise to a claim that an insured had knowledge of prior to the effective date of the policy would place the insurer [sic] in an untenable position of having to make a disclosure of all possible acts, not just existing, but also perceived acts, errors or omissions that may lead to further litigation. Such a requirement expands upon the purpose of a claims made and reported policy. In this case, Stratacare bargained for and obtained a claims made and reported policy which required them to report all claims made within the policy period to the insured.

We fully agree with the trial court's logic. Landmark's allegation Stratacare knew its actions or omissions were likely to lead to a claim suggests Landmark required an admission of possible wrongdoing.

Furthermore, there is no evidence Stratacare was aware in April 2010 that it would be sued in January 2011. Consequently, we find no merit to Landmark's contention the trial court failed to properly apply its prior knowledge exclusion.

Second, Landmark contends its policy is null because of material misrepresentations made by Stratacare in its application for insurance. It alleges Stratacare failed to disclose the prior lawsuits, i.e., the Mor-Tem and H & G actions, as it was required to do under the warranty. In brief, Landmark alleges "[t]here is no question, under the circumstances known to Stratacare at the time of the application, that the issues raised by Plaintiffs were the exact circumstances likely to give rise to additional claims." Thus, Landmark argues its policy is null from its inception.

Louisiana Revised Statutes 22:860(A) states, in pertinent part, "[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." The insurer bears the burden of proving an insured made material misrepresentations sufficient to rescind the insurance policy. *Kahl*

21

*v. Chevalier*, 15-1028 (La.App. 3 Cir. 3/23/16), 188 So.3d 449. Under Louisiana law, to rescind an insurance policy on misrepresentation grounds, an insurer must prove that: "(1) the insured made a false statement; (2) the false statement was material; and (3) it was made with intent to deceive." *Willis v. Safeway Ins. Co. of La.*, 42,665, p. 6 (La.App. 2 Cir. 10/24/07), 968 So.2d 346, 350.

This court has previously explained: "Intent to deceive under La.R.S. 22:860 is determined from circumstances indicating the insured's knowledge of the falsity of the representations made in the application." *Burley v. New York Life Ins. Co.*, 15-263, p. 7 (La.App. 3 Cir. 11/25/15), 179 So.3d 922, 930. Further, "[t]o prove materiality of a false statement under La.R.S. 22:860, the *insurer* must show that the statement was 'of such a nature that, had it been true, the insurer would either not have contracted or would have contracted only at a higher premium rate.'" *Id.* (quoting *Ned v. Magnolia Life*, 590 So.2d 733, 735 (La.App. 3 Cir.1991)).

The warranty upon which Landmark relies is an "Excess Limits Warranty and Representation Letter," sent by Stratacare's Chief Financial Officer Steven L. Ditman, which stated, in pertinent part:

> 1.    There has not been nor is there now pending any claims, suits, or actions (including but not limited to any investigation) against any person or entity proposed for insurance under the policy referenced above, except as follows:
> <u>Walsh Chiropractic TBD vs. StrataCare, Inc.</u>, Case No. 2009 L 001200 (State of Illinois)
>
> . . . .
>
> 2.    No person or entity proposed for insurance under the Policy has knowledge or information of any act, error or omission which may reasonably be expected to give rise to a claim, suit or action (including any investigation) under the Policy, except as follows:
> N/A

Notably, this letter is dated April 14, 2010, and the effective date of Landmark's policy is April 1, 2010.

We find no evidence in the record proving Stratacare was aware of or was the subject of any claim, as defined in the underlying policies of Darwin and Illinois Union, prior to April 1, 2010. Though Stratacare was a defendant in the H & G litigation, we have already stated the Title 23 claims therein are different from the Title 40 claims in the instant matter. Despite Landmark's assertions, we do not find Stratacare's knowledge of the H & G litigation prior to the effective date of Landmark's policy precludes coverage under its prior knowledge exclusion.

Likewise, in regard to the Mor-Tem litigation, a claim was not made against Stratacare until the third-party demand of H & G was filed. This occurred on May 5, 2010, after the effective date of Landmark's policy.

Finally, Landmark has not proven Stratacare made material misrepresentations, and its insinuations are not evidence. There is no evidence proving that on or before April 1, 2010, Stratacare knew Plaintiffs would levy against it allegations of Title 40 notice violations. Stratacare's denials of group purchaser status and resulting liability is weightier than Landmark's intimations that Stratacare must have known its actions were likely to give rise to claims. For these reasons, we find no error in the trial court's rejection of Landmark's prior knowledge exclusion and refusal to deny coverage for Plaintiffs' claims against Stratacare.

*Retroactive Date*

Another contention raised exclusively by Landmark concerns the retroactive date requirement, which Landmark contends is listed as "04/01/2010" on its declarations page.[10] Under the Insuring Agreement section of the two policies Landmark issued to Stratacare, the following language appears:

---

[10] Twice Landmark urged and the trial court rejected the retroactive date requirement. This contention was first urged in Landmark's motion for summary judgment and denied by the trial court in its judgment dated June 20, 2019. It was reiterated in Landmark's motion for new trial and denied by the trial court in its judgment dated September 19, 2019.

> The Company as shown in the Declarations, in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Company shall provide the Insured with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as shown in the Declarations and shall pay **Damages** and associated **Claim Expenses** arising from a **Claim** first made during the **Policy Period** for a negligent act, error, or omission taking place after the **Retroactive Date** as shown in the Declarations.

Additionally, "Retroactive Date" is defined in the Insuring Agreement as "the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy."

Landmark contends its Insuring Agreement expressly adopts the coverage limitation created by the retroactive date; therefore, coverage is limited to only those claims first made during the policy period for a negligent act which first occurred after the retroactive date of April 1, 2010. It alleges no evidence exists that a negligent act by Stratacare first occurred after April 1, 2010. Additionally, Landmark asserts the supreme court has upheld the retroactive date requirement in *Anderson v. Ichinose*, 98-2157 (La. 9/8/99), 760 So.2d 302, and *Gorman v. City of Opelousas*, 13-1734 (La. 7/1/14), 148 So.3d 888.[11]

Plaintiffs contend the retroactive date is Landmark's attempt to convert a claims-made policy into an occurrence policy. They argue their claims against Stratacare fall within the Insuring Agreement because a claim was first made against Stratacare during the policy period, when Stratacare was named a defendant in this

---

[11] Despite Landmark's reliance, the retroactive date requirement was not at issue in *Anderson*, 760 So.2d 302, nor was the issue in *Gorman*, 148 So.3d 888, analogous to the retroactive date issue posed in this case. Thus, we do not find the supreme court's discussion of occurrence versus claims-made policies in either *Anderson* or *Gorman* to be outcome determinative herein.

lawsuit on January 11, 2011. Nevertheless, Plaintiffs refute Landmark's assertion there is no evidence of Stratacare's negligence after April 1, 2010, by offering the testimony of Stephanie Lilja, Fee Schedule Compliance Analyst with Stratacare. At her deposition in March 2012, Ms. Lilja verified Stratacare was still not complying with the notice provisions contained in La.R.S. 40:2203.1.[12] Additionally, Plaintiffs allege an ambiguity exists because Landmark's declarations page lists a "04/01/2010" retroactive date as well as a "03/20/2002" retroactive date.

The label "EXCESS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS – FOLLOW FORM" appears on page one of three of the Landmark policy. Above the title appears the following notice: "This Form Provides Claims-Made Coverage. Please Read The Entire Form Completely."

A claims-made policy covers losses from claims made against the insured if the claim is submitted to the insurer in accordance with the policy terms during the period specified in the policy. *Anderson*, 760 So.2d 302; *Gorman*, 148 So.3d 888. The Louisiana Supreme Court explained the distinct types of policies in *Anderson*, 760 So.2d at 305 (quoting Sol Kroll, *The Professional Liability Policy "Claims Made"*, 13 FORUM 842, 843 (1978)):

> The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

We have determined coverage was afforded under Landmark's policy when Plaintiffs' claim was made on January 11, 2011. Now, Landmark seeks a

---

[12] The continuing failure to fulfill the notice requirements is expected given Stratacare's denials concerning its status as a group purchaser.

determination that the retroactive date has nothing to do with when the claim was made or when the claim was reported but has everything to do with when the wrongful act that is claimed by Plaintiffs first occurred.

As a claims-made policy, the occurrence of the wrongful act is not the factor determinative of whether there is coverage; rather, the determinative factor is when the claim was made. Although a retroactive date requirement is not per se impermissible, we find that to apply the same inception date and retroactive date would be duplicitous and, thus, would lead to an absurd result. Interpretation of an insurance policy should not be unreasonable or strained to enlarge or restrict the policy's provisions beyond what is reasonably contemplated by its terms so as to achieve an absurd conclusion. *See Estate of Munsterman*, 307 So.3d 297. Thus, we reject Landmark's unreasonable interpretation as an attempt to have it both ways, and we find the trial court correctly denied Landmark's motions.

All contentions concerning coverage raised by Appellants are meritless. Thus, Appellants' motions for summary judgment on issues relating to insurance coverage were rightly denied.

### *Peremptory Exceptions*

*Prescription*

We now move on to consider the prescriptive period applicable to Plaintiffs' claims under La.R.S. 40:2203.1. Appellants contend the trial court erroneously characterized Plaintiffs' actions as personal actions, as defined in La.Code Civ.P. art. 422. As a result, Appellants argue the trial court incorrectly determined Plaintiffs' claims had not prescribed because they were subject to a ten-year prescriptive period found in La.Civ.Code art. 3499.

When Appellants' peremptory exceptions of prescription were overruled, the trial court referred both to its prior adjudication of an identical exception raised by

Stratacare as well as this court's decision in *Gunderson v. F.A. Richard & Assocs.*, 09-1498 (La.App. 3 Cir. 6/30/10), 44 So.3d 779, wherein this court affirmed the trial court's finding that claims arising under La.R.S. 40:2203.1 were personal actions and subject to ten-year prescription. In so ruling, this court declared:

> The Louisiana [Preferred Provider Organization Act] does not set out a prescriptive period for bringing an action for violation of the notice requirement of La.R.S. 40:2203.1. This action is personal in nature as defined by La.Code Civ.P. art. 422, which states that:
>
> > A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.
> >
> > A real action is one brought to enforce rights in, to, or upon immovable property.
> >
> > A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof.
>
> Louisiana Civil Code Article 3499 states that personal actions are subject to a ten year prescriptive period "unless otherwise provided by legislation." Unlike the claim for past due wages considered by the court in *Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr.*, 04-2482 (La.4/12/05), 898 So.2d 1260, the claim urged by Plaintiffs is not "otherwise provided by legislation." Accordingly, we find no error in the trial court's determination that a ten year prescriptive period applies to the action.

*Gunderson*, 44 So.3d at 784.

Here, Appellants argue Plaintiffs' claims sound in tort, rather than in contract; therefore, the trial court should have applied the one-year prescriptive period set forth in La.Civ.Code art. 3492. Appellants arguments in this regard primarily rely on the majority ruling of the Louisiana Supreme Court in *DePhillips v. Hospital Serv. Dist. No. 1 of Tangipahoa Parish*, 19-1496 (La. 7/9/20), --- So.3d ---, which they contend implicitly overrules this court's decision in *Gunderson*, 44 So.3d 779.

27

Plaintiffs contend *DePhillips* is inapposite and argue for application of the law of the case doctrine based on the adjudication of Stratacare's exception of prescription in 2013. Then, as now, the trial court overruled the exception relying on *Gunderson*, 44 So.3d 779. Subsequently, this court denied Stratacare's application for supervisory writ, finding "no error in the trial court's ruling." *Williams v. Bestcomp, Inc.*, 13-219 (La.App. 3 Cir. 5/31/13) (unpublished).

The law of the case doctrine "refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case. This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court." *Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 331, 256 So.2d 105, 107 (1971) (footnotes omitted).

Appellants were not parties herein when this court's prior ruling on prescription was rendered. For this reason, our review is not controlled by the law of the case doctrine. We also note the trial court judgment presently at issue predates the supreme court's consideration of prescription in *DePhillips*, --- So.3d ---. For this reason, we feel our review is judicious.

Questions of law are reviewed de novo, without deference to the legal conclusions of the court below. *Smith v. Citadel Ins. Co.*, 19-052 (La. 10/22/19), 285 So.3d 1062. Furthermore, our jurisprudence requires prescription statutes to be "strictly construed against prescription and in favor of the claim sought to be extinguished by it; thus, of two possible constructions, that which favors maintaining, as opposed to barring an action, should be adopted." *Wells v. Zadeck*, 11-1232, p. 7 (La. 3/30/12), 89 So.3d 1145, 1149.

Under La.Code Civ.P. art. 3499, "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." A "personal

action" is defined in La.Civ.Code art. 422 as "one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess." Whereas a "real action" is "one brought to enforce rights in, to, or upon immovable property." *Id.*

> The nature of the duty breached determines whether the action is in tort or in contract. *Roger* [*v. Dufrene*], 613 So. 2d [947, 948 (La.1993)]; *Dean v. Hercules, Inc.*, 328 So. 2d 69, 70 (La. 1976). "The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." *Thomas v. State Employees Grp. Benefits Program*, 05-0392 (La.App. 1 Cir. 3/24/06), 934 So. 2d 753, 757.

*Smith*, 285 So.3d at 1067.

In *DePhillips*, --- So.3d ---, the Louisiana Supreme Court examined claims brought under the Health Care Consumer Billing and Disclosure Protection Act, La.R.S. 22:1871–1881 ("Balance Billing Act") by insured patients against contracted health care providers.[13] In classifying the nature of the obligation breached to determine the applicable prescriptive period, the speaker for the majority, Justice Crichton, wrote:

> Pursuant to the Act, a contracted healthcare provider is prohibited from taking certain actions to collect amounts owed to the provider, including discount billing or dual billing a patient to collect amounts allegedly owed to the provider. La.R.S. 22:1874(A)(1)-(4). These duties are owed to "an enrollee or insured," a defined term that means "a person who is enrolled in or insured by a health insurance issuer for health insurance coverage." La.R.S. 22:1872(A)(11). In other words, by the plain language of the Act, this is a duty owed by ***all*** "contracted health care providers" to ***all*** "enrollees or insured," and is not specific to any individual. It is a general duty imposed by statute and, thus, does not arise from any special obligation owed by [defendant health care provider] to [the plaintiff in this case]. *See Smith*, 19-0052, p. 6, 285 So. 3d at 1067. We therefore find the nature of the duty breached is delictual in nature, and the claims are subject to a one-year prescriptive period. *Roger*, 613 So. 2d 948.

---

[13] The Balance Billing Act prohibits a contracted health care provider from collecting or attempting to collect amounts from an insured patient more than the contracted reimbursement rate. *See* La.R.S. 22:1874.

*Id.* at --- (footnote omitted). Thus, the insured patients' claims against contracted health care providers under the Balance Billing Act were characterized as delictual and thus subject to a one-year, rather than ten-year, prescriptive period.[14]

However, less than a year before its ruling in *DePhillips*, --- So.3d ---, the supreme court, in *Smith*, 285 So.3d 1062, found the proper prescriptive period applicable to a first-party bad faith claim against an insurer to be the ten-year prescriptive period provided by La.Civ.Code art. 3499. The undivided court noted "[t]he duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties." *Smith*, 285 So.3d at 1069.

Like this case, *Gunderson*, 44 So.3d 779, involved claims brought under the PPO Act by health care providers alleging violations of the notice provisions in La.R.S. 40:2203.1(B). This court found that interpreting La.R.S. 40:2203.1 supports "a strong public policy in favor of notice to health care providers that a PPO discount may be taken." *Gunderson*, 44 So.3d at 783.

Under the PPO Act, providers agree to discount medical bills on the condition that prior notice via benefit card or thirty days written notice will be provided by group purchasers. The underlying agreement, i.e., the PPO between provider and group purchaser is the source of the duty owed to providers and the cause of action for damages under La.R.S. 40:2203.1 belongs only to providers. Thus, the duty owed by a group purchaser extends only to providers.

In this case, Plaintiffs agreed to perform medical services at alternative rates of payment (PPO discounts) in exchange for membership in PPOs established by group purchasers. *See* La.R.S. 40:2202. Under La.R.S. 40:2203.1(B), PPO

---

[14] Despite ruling the insured patients' claims are subject to a prescription period of one year, the supreme court did not reach the issue of when prescription begins to run under the Balance Billing Act.

discounts shall not be enforceable without prior notice via benefit card or thirty days written notice, otherwise group purchasers shall be subjected to the punitive provisions of La.R.S. 40:2203.1(G). Thus, the underlying agreement, i.e., the PPO, between provider and group purchaser for alternative rates of payment is the source of the duty to providers for causes of action under La.R.S. 40:2203.1. In other words, Plaintiffs' claims are an outgrowth of the contractual relationship between providers and group purchasers.

For these reasons, we stand by the prior ruling of this court set forth in *Gunderson*, 44 So.3d 779. Plaintiffs' claims are subject to a liberative prescription of ten years. Accordingly, Appellants' exceptions of prescription were properly overruled.

*No Right of Action*

Alternatively, Appellants object to Plaintiffs' right to sue them in a direct action should Plaintiffs' action be characterized as contractual. Appellants argue Plaintiffs' claims for Stratacare's alleged violations of La.R.S. 40:2203.1 are prohibited by the direct-action statute, La.R.S. 22:1269, because this statute provides a procedural right of action against insurers for claims that arise only in tort, not in contract.

An exception of no right of action poses a question of law and is reviewed by the appellate court de novo. *Castille v. La. Med. Mut. Ins. Co.*, 14-519 (La.App. 3 Cir. 11/5/14), 150 So.3d 614.

The argument before us was considered by this court in *Williams v. SIF Consultants of La., Inc.*, 12-419 (La.App. 3 Cir. 11/7/12), 103 So.3d 1172, *writ denied*, 12-2637 (La. 3/15/13), 109 So.3d 381. In that case, however, the parties agreed the action under La.R.S. 40:2203.1 was an action in contract. In *Williams*, 103 So.3d 1172, this court reasoned that despite the insurers' argument this was an

action in contract such that the application of the direct-action statute was barred, a statutory duty was involved, and thus, the source of the duty involved would not have been the contract itself, but rather society's interest in protecting its members against uncompensated injury.

Applying our reasoning in *Williams*, 103 So.3d 1172, we find no merit in Appellants' contention Plaintiffs have no right of action. Thus, Appellants' exceptions of no right of action were properly overruled.

### *Motion for New Trial*

Lastly, Appellants' final two shared assignments of error stem from the denial of their motions for new trial. Appellants argue the trial court erred in not applying res judicata to dismiss Plaintiffs' claims under each Appellants' respective second policy and the trial court erred in not dismissing Plaintiffs' claims based on untimely notice under each Appellants' respective first policy.[15]

In July 2019, Appellants filed motions for new trial, asserting the trial court wrongly denied, without hearing, the motions for summary judgment which Appellants filed on or about March 19, 2019, a week before the trial court issued its written Reasons for Judgment on the coverage issues which had been taken under advisement at the conclusion of the hearing held on September 28, 2018. They also alleged entitlement to reconsideration of the trial court's judgment dated June 20, 2019, pursuant to La.Code Civ.P. arts. 1951, 1971, 1972, and 1973.

---

[15] Illinois Union was a party to a lawsuit in California to establish which of Stratacare's insurers had a duty to defend Stratacare in the Mor-Tem action. A judgment rendered on September 10, 2013, in California, prior to Appellants being named defendants in the instant litigation by direct action on October 1, 2013, dismissed Illinois Union from the lawsuit in California. On January 26, 2015, Illinois Union filed Peremptory Exceptions of No Right of Action and Res Judicata or Alternatively, Motion for Summary Judgment. Therein, Illinois Union argued the judgment rendered in California excluded coverage for the instant lawsuit. On November 7, 2018, the trial court in this matter issued judgment granting Peremptory Exceptions of No Right of Action and Res Judicata or Alternatively, Motion for Summary Judgment.

Appellants asserted the trial court's dismissal of Illinois Union, via judgment signed on November 18, 2018, barred coverage under both the Second Chartis Policy and the Second Landmark Policy. The Second Chartis Policy and the Second Landmark Policy followed the form and were excess of an underlying policy issued by Illinois Union to Stratacare effective from September 30, 2010, through September 30, 2011.

Appellants argued coverage is precluded for Plaintiffs' claims against Stratacare under each Appellants' respective first policy because Stratacare's notice was provided during the term of each Appellants' respective second policy. Thus, Appellants contended Plaintiffs' claims are barred by res judicata—Illinois Union's dismissal eviscerates coverage from September 30, 2010, through September 30, 2011. Furthermore, Appellants contended Plaintiffs' claims are barred by untimely notice—Stratacare's notice in April 2011 did not occur during the term of each Appellants' respective first policy from April 1, 2010, through September 30, 2010.

Plaintiffs opposed the motions, arguing Appellants' motions were neither based on newly discovered evidence nor was the trial court's judgment of June 20, 2019, contrary to the law and the evidence. They allege Appellants never contested the timeliness of notice, or lack thereof, despite Appellants' having known for several years when Stratacare's notice of Plaintiffs' claim was received by Landmark and Chartis. Additionally, Plaintiffs argue res judicata does not apply to warrant dismissal of Plaintiffs' claims under each Appellants' respective second policy.

Appellants' motions for new trial were denied after a hearing on August 30, 2019. The ruling at issue in this appeal is the refusal of the trial court to reconsider its prior ruling and concomitant judgment of June 20, 2019.

Generally, new trials are granted in the interest of justice and are largely left to the discretion of the trial judge. *Smith v. Alliance Compressors*, 05-855 (La.App. 3 Cir. 2/1/06), 922 So.2d 674. The standard of appellate review in ruling on a motion for new trial is whether the trial court abused its discretion. *Martin v. Heritage Manor S.*, 00-1023 (La. 4/3/01), 784 So.2d 627. "When reviewing the grant or denial of a motion for new trial, an appellate court cannot reverse the trial court's decision unless an abuse of discretion can be demonstrated." *Wedgeworth v. Mixon*, 15-686, p. 9 (La.App. 3 Cir. 2/3/16), 184 So.3d 876, 883, *writ denied*, 16-422 (La. 4/22/16), 191 So.3d 1049.

Louisiana Code of Civil Procedure Article 1971 provides the discretionary grounds that may serve as the basis for granting a new trial:

> A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.

Louisiana Code of Civil Procedure Article 1972 provides the peremptory grounds that may serve as the basis for granting a new trial:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

The discretionary grounds for granting a new trial are set forth in La.Code Civ.P. art. 1973, which states that a new trial may be granted at the discretion of the judge "in any case if there is good ground therefor, except as otherwise provided by law."

34

Under the provisions of La.Code Civ.P. art. 1975, when the motion for new trial is based on La.Code Civ.P. art. 1972(2), newly discovered evidence, "the allegations of fact therein shall be verified by the affidavit of the applicant." Each motion for new trial was supported by the affidavit of counsel for each Appellant.

The affidavit of counsel for Landmark notes, in pertinent part: "As noted by the affidavit of Dylan Gist attached to the Second Motion for Summary Judgment and the Motion for New Trial, Stratacare first provided notice of a claim to Landmark on April 20, 2011." In the affidavit of Dylan Gist, dated March 19, 2019, the following attestation appears, "On April 20, 2011, Stratacare provided its first notice of claim to Landmark in connection with any policy issued by Landmark to Stratacare." The affidavit of counsel for Chartis notes, in pertinent part: "On April 19, 2011, after being named as a defendant in the First Amended Petition, Stratacare provided its first notice to Chartis of this—or indeed any—claim." Significantly, Appellants' affidavits do not attest that their notice evidence is newly discovered.

Though Appellants contend the recently rendered judgment dismissing Illinois Union affects their coverage, Appellants' allegations relating to notice were not raised, and Appellants have failed to establish the existence of any newly discovered evidence that could not have been discovered with due diligence prior to the trial court's consideration of the parties various cross-filings.[16] *See LeBlanc v. Consol. Aluminum Co.*, 401 So.2d 1082 (La.App. 3 Cir.), *writ denied*, 409 So.2d 617 (La.1981). Based on our extensive review of this voluminous record and having found no merit to any of Appellants' arguments, we do not find the trial court abused its discretion in denying Appellants' motion for new trial.

---

[16] The trial court specifically noted in its Reasons for Judgment: "It was . . . not shown that once Stratacare was brought in as a defendant in these lawsuits that they failed to give notice. Whether or not the claim was reported has not been denied by either of the defendants."

**DECREE**

For the foregoing reasons, the trial court judgments dated June 20, 2019, and September 19, 2019, are affirmed. All costs of this appeal are assessed to Defendants/Appellants, Chartis Specialty Insurance Company and Landmark American Insurance Company.

**AFFIRMED.**